**ALLIS–CHALMERS MANUFACTURING COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 59–C–149.

United States District Court
E. D. Wisconsin.

Nov. 2, 1961.

Richard R. Teschner, Quarles, Herriott & Clemons, Milwaukee, Wis., for plaintiff.

Richard T. Mulcahey, Tax Div., Dept. of Justice, Washington, D. C., James B. Brennan, U. S. Atty., Milwaukee, Wis., for defendant.

TEHAN, Chief Judge.

The plaintiff, Allis-Chalmers Manufacturing Company, a Delaware corporation, with its general office and principal place of business in the City of West Allis, Wisconsin, commenced this action pursuant to § 1346(a) (1), Title 28 U.S.C. to recover Federal income and excess profits taxes alleged to have been erroneously assessed and collected for the calendar year ending December 31, 1953. The issues raised by the complaint and the answer of the defendant, United States of America, came on for trial to the court, which has considered the pleadings herein, the partial stipulation of facts filed, the evidence presented and the argument of counsel set forth in their briefs and is prepared to render its decision.

The plaintiff manufactures and sells electrical power generating and distributing equipment, farm tractors and equipment, and earth-moving, grading and road construction equipment. It reports its taxable income on a calendar year basis and keeps its books and records on an accrual basis. Its Federal income and excess profits tax returns for the calendar year ending December 31, 1953 were duly and timely filed by it, and the taxes disclosed therein, in the amount of $23,086,942.93, were duly and timely paid to the District Director of Internal Revenue at Milwaukee, Wisconsin.

The Commissioner of Internal Revenue caused an audit to be made of the plaintiff's books and records, following which he proposed a deficiency in its 1953 income taxes of $451,013.84 and in its 1953 excess profits taxes of $258,-627.74, a total deficiency of $709,641.58. Said amounts, plus interest thereon, were duly paid by the plaintiff to the District Director of Internal Revenue at Milwaukee, Wisconsin, on January 25, 1956. On March 6, 1957, the plaintiff duly and timely filed a claim for refund in the amount of $62,779.61 and thereafter received a refund of $824.00 plus interest by reason of an adjustment not here material. On October 30, 1957, the plaintiff waived its right to a registered mail notice of disallowance of its claim for refund of income and excess profits taxes paid for the taxable year 1953.

On or about December 3, 1953, the plaintiff and six public utility companies operating in Wisconsin, entered into an agreement with the Wisconsin Utilities Association. The agreement expressed the Association's desire to purchase a Westinghouse A-C Network Calculator for donation to the University of Wisconsin which calculator would be made available by the University for the use of members of the Association for twenty years. It further expressed the fact that the Association lacked funds with which to purchase and install the Calculator and stated that the "Contributing Members", that is, the plaintiff and the six utility companies signing the agreement desired to contribute such funds "provided they are assured the right to use said Calculator a specified period each year during the aforesaid twenty (20) year period." Under the terms of the agreement, the Contributing Members were to contribute approximately $240,000 to the Association, the plaintiff's share being $72,000, which sum the Association was to use to purchase and install a Calculator. The agreement was to become effective upon

execution of a separate agreement between the Association and the University of Wisconsin's Board of Regents, the obligations of which the Contributing Members agreed to assume and the terms of which we shall hereinafter discuss. The interest of each Contributing Member under the agreement with the Association could be sold or otherwise disposed of, with certain limitations not here material. [1]

On December 17, 1953, the Association and University Board of Regents entered into the agreement upon which the effectiveness of the above described agreement depended. In this contract, the Association agreed to purchase a Calculator, donate it to the University and have it installed on the campus. The University agreed to provide physical facilities for operation of the Calculator, to provide a conference room and facilities for filing data for use by the Contributing Members, to provide an operator, and to provide maintenance and repair. It further agreed to make the Calculator available to Contributing Members for a total of forty weeks a year, the plaintiff being allotted twelve of those weeks. The Calculator was reserved to the University for its own use a minimum of eight weeks a year for the term of the agreement. The Contributing Members paid daily rates for use of the Calculator, such rates being less than rates paid by others using it. The rates were to cover expenses relating to the Calculator, and were adjustable by the Advisory Committee, a committee consisting of one representative for each contributing member and four University representatives which supervised the operations of the Calculator. The Contributing Members had greater voting power on that committee than the University.[1] Under the agreement, students were permitted to assist in operating the Calculator, unless the Contributing Member using it certified that its studies were confidential, in which event students could be excluded. The agreement was for a term of twenty years. The plaintiff paid $72,000 to the Association on or about December 17, 1953, pursuant to the contract of December 3, 1953, as its share of the cost of the Calculator. The Calculator was thereafter purchased and transferred to the University.

When entering into the agreement of December 3, 1953, the plaintiff realized that it would be unable to use all of the time allotted to it. It already had the right to use a Calculator at the Illinois Institute of Technology and donated most of its time on that machine to customers or others having use for power systems study, those others being describable as potential customers. This same practice of donation of the plaintiff's time on the Calculator to others has been followed at the University of Wisconsin, since the time of installation of the Calculator there in 1955.

In filing its Federal income and excess profits tax returns for 1953, the plaintiff treated the payment of $72,000 to the Association as a business expense. The aforementioned deficiency in taxes for that year to the extent of $59,040 was based on the determination of the Commissioner of Internal Revenue that that payment was a capital expenditure and was not deductible either as a business expense under § 23(a) of the Internal Revenue Code of 1939, 26 U.S.C. § 23(a) or as a charitable contribution under § 23(q) of the Internal Revenue Code of 1939. This determination resulted in a $72,000 increase in the plaintiff's net income for 1953. We are here asked to decide whether the Commissioner's determination was erroneous.

Section 23(q) of the Internal Revenue Code of 1939 allows as a deduction contributions or gifts made by a corporation to or for the use of certain specified classes. It has been stipulated that the Regents of the University of Wisconsin are an organization described in § 23 (q) (2). We are here faced only with the problem of ascertaining whether the

1. The Contributing Members had forty votes and the University eight.

payment in question was a gift or contribution.

■ It is the position of the plaintiff that in ascertaining the nature of the payment, the court must consider the agreements of December 3, 1953 and December 17, 1953 as wholly separate transactions and must conclude that the agreement of December 3, 1953 and payment thereunder established a gift and the later agreement was a transaction in addition to the gift under which the contributing members purchased time on the Calculator paying full value for that time.

This contention finds utterly no support in the conduct and actions of the contracting parties or in the agreements themselves. The evidence clearly shows that in this case the Contributing Members and the University themselves have at all times read and interpreted the contracts together. The Contributing Members acquitted themselves of the obligations imposed under the contract of December 3, 1953 with the Association by contributing approximately $240,000 and by abiding by the terms of the contract between the Association and the University. The University has performed its obligations under the contract with the Association by providing space, facilities, etc. and allocating forty weeks' use to the Contributing Members. It could be pointed out too that we have been referred to no instances where the parties did not treat these two contracts as complementary and to be read together. The Agreement of December 3, 1953 itself expressly provides on Page 1:

"Whereas, the Contributing Members are desirous of contributing the necessary funds provided they are assured the right to use said Calculator a specified period each year during the aforesaid twenty (20) year period;"

and on Page 2:

"4. This agreement shall become effective upon the execution of an agreement by and between the As-

sociation and The Board of Regents of the University of Wisconsin substantially the same as that attached hereto marked Exhibit A and made a part hereof, and the individual Contributing Members hereby acknowledge the obligations imposed upon them therein and agree to assume the same."

■■ We have no difficulty in holding here that the plaintiff taxpayer has not established its right to deduct the $72,000 as a charitable contribution under § 23(q) of the Internal Revenue Code of 1939. As used in the statute, the words "gifts" and "contributions" contemplate transfers of property without consideration. A reading of the two agreements which we hold to be complementary each to the other, clearly establishes not only the existence of consideration but reveals a painstaking care on the part of all of the parties to the two contracts to provide that the consideration or benefits be distributed in substantial proportion to the contribution made by each individual party. The plaintiff here contributed three-tenths of the purchase price of the Calculator and received in return the right to use, assign or donate the use of that machine for three-tenths of the time assigned to the Contributing Members and three-thirteenths of the total time. Each of the other Contributing Members received benefits in proportion to their contribution. The University in consideration of its contribution of space and facilities acquired the right of a minimum of eight weeks' use for its own purposes together with title subject to the twenty-year agreement. Where as here the benefits received by the Contributing Members are so immediate, tangible and so heavily weighted in their favor, no deduction is allowable under § 23(q).

On the record, the taxpayer asserts the right to a deduction under § 23(a) of the Internal Revenue Code of 1939. At the trial and in its briefs, it has advanced no support whatsoever for this position. It is our opinion that the $72,-

000 payment is not deductible in full in 1953 as a business expense. The plaintiff acquired a contractual right to use the Calculator for twenty years. The Commissioner properly determined that the payment for this right was a capital expenditure.

The foregoing Opinion shall stand as and for Findings of Fact and Conclusions of Law within the meaning of Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.