Harold DeJONG and Marjorie J. DeJong, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 17713.

United States Court of Appeals
Ninth Circuit.

Oct. 25, 1962.

William H. Dick, Stockton, Cal., for appellant (petitioners).

Crane C. Hauser, Chief Counsel, Int. Rev. Serv., Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, Arthur E. Strout, Attys., Tax Division, Dept. of Justice, Washington, D. C., for appellee.

Before JERTBERG and MERRILL, Circuit Judges, and PENCE, District Judge.

JERTBERG, Circuit Judge

Before us is a petition to review a decision of the Tax Court of the United States holding that the sum of $400.00 paid by petitioners to The Society For Christian Instruction, Of Ripon, California in 1958 was not deductible as a charitable contribution under § 170 of the Internal Revenue Code of 1954 (26 U.S. C. § 170). The findings of fact and opinion of the Tax Court are reported at 36 T.C. 896.

Petitioners, husband and wife, residents of Ripon, California, filed a joint income tax return for the calendar year 1958 in which a charitable deduction in the sum of $1,075.00 was claimed for payment made by them to The Society For Christian Instruction, Of Ripon, California. The respondent decreased the deduction claimed by the sum of $400.00 on the ground that said amount of the claimed deduction of $1,075.00 did not constitute a charitable contribution under the above mentioned section. The Tax Court sustained the respondent's determination.

The stipulation of facts and the additional facts found by the Tax Court are not in dispute and may be summarized as follows:

The Society For Christian Instruction, Of Ripon, California (hereinafter referred to as the Society), is a non-profit corporation organized under the laws of the State of California, a corporation organized and operated exclusively for educational purposes, and exempt from federal income taxes under § 501(c) (3) of the 1954 Code, 26 U.S.C. § 501(c) (3).

The Articles of Incorporation of the Society provide, in part, as follows:

"Second: That the purposes for which said corporation is organized are:

"(1) To establish and carry on a seminary or school of learning where pupils and students may obtain a sound and thorough training in Christian religion and doctrines, mechanical, literary and general education of the highest order. Such training and education shall be God-centered in accordance with the basic principles of this Society. These basic principles are the doctrines revealed in the infallible Word of God as expressed in the Three Formulas of Unity as subscribed to by the Reformed Churches, to-wit: The Heidelberg Catechism, The Belgic Confession and the Canons of Dort.

\* \* \* \* \* \*

"Sixth: That all persons eighteen years of age and over, who subscribe to the basic principles of this Society, as set forth in Article Second, Paragraph (1) of these Articles, may become members of this corporation. All members are obligated to contribute to the financial support of the Society to the best of their ability. Applications for membership may be submitted at any regular meeting of the Board of Trustees or of the membership of the corporation.

\* \* \* \* \* \*

"Ninth: That this corporation shall exist wholly from the voluntary contributions, collections, legacies, and any other funds which may be legally collected by or donated to this corporation. That there shall not be any profit to any of the members and that in the event of dissolution, the assets of the corporation shall pass to the National Education Foundation, Grand Rapids, Michigan."

The Society owned and operated a grammar school and a high school at Ripon, California [1] during 1958 and for some years prior thereto. These schools are full-time schools, accredited by the University of California, and instruction is given in Christian religion and doctrines as a part of their regular curriculum. Both petitioners had been members of The Christian Reformed Church for many years and attended the schools operated by the Society at Ripon, California. Petitioner Harold DeJong had been a member of the Society for many years and had served as a member and officer of the Board of Trustees of the Society for a number of years.

The Society charges no tuition but raises its funds from parents of enrolled students, supporting churches, non-student parent members and other persons.

---

1. The 1960 Census reports the population of Ripon at 1,894.

interested in the schools. Funds from parents of students are secured in the following manner:

In the late summer or early fall of each year, enrollment committees appointed by the board of trustees of the Society meet with parents of prospective students. At these meetings the parents are given "a broad picture of what the cost will be in the operating budget for the coming year" and they are asked to contribute to the best of their ability and to try to carry as much "of the load as they feel they can". When a parent is known to be "pretty well-to-do" it is suggested that he contribute the full amount of the estimated cost per student for the coming year times the number of students he is enrolling. All of the parents interviewed are given an enrollment card to sign and are asked to indicate thereon the number of students they wish to enroll and the amount of the contribution they intend to make toward the operation of the school or schools. With the exception of a few parents who have reservations against signing a card of this nature, signed cards are received from all parents.

Children of non-society member parents are enrolled if facilities are available, and the parents sign a statement of policy agreeing with the principles and purposes of the schools. Non-member parents are also asked to contribute toward the operation of the school or schools.

Approximately 70 percent of the total income of the Society is derived from contributions from parents of enrolled students.

All moneys received by the Society are credited to the general operating fund of the Society without designation. No student is refused admission to the Society's schools for failure of his parents to contribute financially to the Society. All facilities of the schools are available to all students irrespective of the amounts pledged or contributed by their parents. However, all parents of prospective students do pledge a certain amount of money, although in some cases that amount is "very nominal." No action is taken to collect on delinquent pledges except persuasion.

During 1958, the taxpayers' two children, Robert and William DeJong, were full-time students of the grammar school operated by the Society. The taxpayers paid $1,075 in 1958 to the Society and deducted this amount as a contribution on their 1958 income tax return.

It was stipulated that the sum of $400.00 was "the approximate cost to The Society For Christian Instruction, Of Ripon, California of educating petitioners' two children during the calendar year 1958."

The sole question presented to us is whether the Tax Court erred in holding that the $400.00 paid by petitioners to the Society was in the nature of a tuition fee paid for the education which the Society was expected to furnish the petitioners' children, and therefore not deductible as a charitable contribution.

The pertinent parts of § 170 with which we are primarily concerned provide:

Internal Revenue Code of 1954:

"§ 170. *Charitable, etc., contributions and gifts*

"(a) *Allowance of deduction.—*

"(1) *General rule.*—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate.

\*　\*　\*　\*　\*　\*

"(c) *Charitable contribution defined.*—For purposes of this section, the term 'charitable contribution' means a contribution or gifts to or for the use of—

\*　\*　\*　\*　\*　\*

"(2) A corporation, trust, or community chest, fund, or foundation—

"(A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State or Territory, the District of Columbia, or any possession of the United States;

"(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals;

"(C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and

"(D) no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation.

A contribution or gift by a corporation to a trust, chest, fund, or foundation shall be deductible by reason of this paragraph only if it is to be used within the United States or any of its possessions exclusively for purposes specified in subparagraph (B)."

(26 U.S.C. 1958 ed., Sec. 170.)

Attention should also be noted of certain provisions of § 262 of the same Code:

"*Personal, living, and family expenses*

"Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses."

(26 U.S.C. 1958 ed., Sec. 262.)

Included in the findings of fact of the Tax Court is the finding that "at least $400 of the amount paid by petitioners to the society in 1958 was intended as payment in the nature of tuition for petitioners' children, a personal expense, and did not constitute a charitable contribution." In the course of its opinion, the Tax Court stated:

"Payments pledged and made by parents in the circumstances disclosed by the evidence were not voluntary and gratuitous contributions motivated merely by the satisfaction which flows from the performance of a generous act; they were induced, at least in substantial part, by the benefits which the parents sought and anticipated from the enrollment of their children as students in the society's school. Whether such payments be labeled as 'tuition' is a matter of no consequence. They were certainly in the nature of tuition, at least in substantial part."

■ The law is well settled that tuition paid for the education of the children of a taxpayer is a family expense, not a charitable contribution to the educating institution. Channing v. United States, 4 F.Supp. 33 (D.Mass.), aff'd., 67 F.2d 986 (1st Cir. 1933), cert. denied, 291 U.S. 686, 54 S.Ct. 563, 78 L.Ed. 1072; Cooper v. Commissioner of Internal Revenue, 264 F.2d 889 (4th Cir. 1959).

Before considering whether the Tax Court's finding of fact above quoted is clearly erroneous, we will first consider whether the Tax Court erred in its construction of § 170(c) (2) (B) as applied to the facts of this case.

The section allows as a deduction any charitable contribution (as defined), payment of which is made within the taxable year. As defined in Subsection (c), the term "charitable contribution" means a contribution or gift to or for the use of certain types of organizations organized and operated for certain specified purposes and having certain specified characteristics. The Society is admittedly one such organization and its tax-exempt status is not an issue. The section, however, does not further define the terms "contribution" and "gift". The Tax Court stated that as used in the section, the terms are synonymous. See also Channing v. United States, supra. We have found nothing which indicates otherwise. In Bok v. McCaughn, Collector of Internal Revenue, 42 F.2d 616 (3rd Cir. 1930), one of the issues to be decided was whether the fund or foundation there involved was "organized

\* \* \* exclusively for \* \* \* charitable or educational \* \* \* purposes, \* \* \*." In the course of its opinion, the court stated: .

"Charity, derived from the Latin caritas, originally meant love. In the thirteenth chapter of first Corinthians the revised version uses the word 'love' in defining the third of the three cardinal virtues, which, in King James' version read 'Faith, Hope and Charity.' It was with similar emphasis on the motive which prompts action that Mr. Binney framed his approved definition of a charitable trust in his argument in the Girard will case: 'Whatever is given for the love of God, or the love of your neighbor, in the catholic and universal sense, given from these motives and to these ends, free from the stain or taint of every consideration that is personal, private, or selfish.' Vidal v. Girard's Executors, 2 How. [127] 128, 11 L.Ed. 205 (1844) which is quoted by the Supreme Court in Ould v. Washington Hospital, 95 U.S. [303] 311, 24 L.Ed. 450. Charity means such unselfish things as are wont to be done by those who are animated by the virtue of love. Thus the Supreme Court of the United States, following Chancellor Kent, Lord Lyndhurst, and Lord Camden, has defined a charitable trust as 'a gift to a general public use, which extends to the poor as well as to the rich.' Perin v. Carey, 24 How. [465] 506, 16 L. Ed. 701 (1860). So, also, Mr. Justice Gray speaking for the Supreme Court of Massachusetts in Jackson v. Phillipps, 14 Allen [539] 556 (1867), declared a charitable gift to be one 'for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government.' "

See also Dubois v. Commissioner of Internal Revenue, 31 B.T.A. 239 (1934); Gimbel v. Commissioner of Internal Revenue, 54 F.2d 780 (3rd Cir. 1931); Ould v. Washington Hospital For Foundlings, 95 U.S. 303, 24 L.Ed. 450 (1887).

We have found no other helpful decisions construing the meaning of the terms "charitable contribution" or "charitable gift" as used in § 170. However, the term "gift" as used in other sections of the Internal Revenue Code, but not necessarily of a charitable connotation, has been construed in many decisions. Among them are many decisions of the Supreme Court of the United States concerned with the provision of the Internal Revenue Code which excludes from gross income of a taxpayer "the value of property acquired by Gift." One of the latest is Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). In the course of the opinion is it stated:

"The meaning of the term 'gift' as applied to particular transfers has always been a matter of contention. Specific and illuminating legislative history on the point does not appear to exist. Analogies and inferences drawn from other revenue provisions, such as the estate and gift taxes, are dubious. See Lockard v. Commissioner [1 Cir.], 166 F.2d 409. The meaning of the statutory term has been shaped largely by the decisional law. \* \*

"The course of decision here makes it plain that the statute does not use the term 'gift' in the common-law sense, but in a more colloquial sense. This Court has indicated that a voluntary executed transfer of his property by one to another, without any consideration or compensation therefor, though a common-law gift, is not necessarily a 'gift' within the meaning of the statute. For the Court has shown that the mere absence of a legal or moral obligation to make such a pay-

ment does not establish that it is a gift. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 730 [49 S. Ct. 499, 504, 73 L.Ed. 918]. And, importantly, if the payment proceeds primarily from * * * 'the incentive of anticipated benefit' of an economic nature, Bogardus v. Commissioner, 302 U.S. 34, 41 [58 S.Ct. 61, 65, 82 L.Ed. 32], it is not a gift. And, conversely, '[w]here the payment is in return for services rendered, it is irrelevant that the donor derives no economic benefit from it.' Robertson v. United States, 343 U.S. 711, 714 [72 S.Ct. 994, 996, 96 L.Ed. 1237]. A gift in the statutory sense, on the other hand, proceeds from a 'detached and distinterested generosity,' Commissioner v. LoBue, 351 U.S. 243, 246, [76 S.Ct. 800, 803, 100 L.Ed. 1142]; 'out of affection, respect, admiration, charity or like impulses.' Robertson v. United States, supra [343 U.S.] at 714 [72 S.Ct. at 996]. And in this regard, the most critical consideration, as the Court was agreed in the leading case here, is the transferor's 'intention.' Bogardus v. Commissioner, 302 U.S. 34, 43, [58 S.Ct. 61, 82 L.Ed. 327]. 'What controls is the intention with which payment, however voluntary, has been made.' Id., [302 U.S.] at 45 [58 S.Ct. at 66] (dissenting opinion)."

In the above case the Supreme Court refused to promulate a new "test" to serve as a standard to be applied by the lower court and the Tax Court in dealing with the problems arising in the exclusion from gross income of the value of property acquired by gift. Instead it stated, 363 U.S. at p. 289, 80 S.Ct. at p. 1198:

"Decision of the issue presented in these cases must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case. The nontechnical nature of the statutory standard, the close relationship of it to the data of practical human experience, and the multiplicity of relevant factual elements, with their various combinations, creating the necessity of ascribing the proper force to each, confirm us in our conclusion that primary weight in this area must be given to the conclusions of the trier of fact. Baker v. Texas & Pacific R. Co., 359 U.S. 227 [79 S.Ct. 664, 3 L.Ed.2d 756]; Commissioner v. Heininger, 320 U.S. 467, 475, [64 S.Ct. 249, 88 L.Ed. 171]; United States v. Yellow Cab Co., 338 U.S. 338, 341 [70 S.Ct. 177, 94 L.Ed. 150]; Bogardus v. Commissioner, supra, [302 U.S.] at 45 [58 S.Ct. at 66] (dissenting opinion).

"This conclusion may not satisfy an academic desire for tidiness, symmetry and precision in this area, any more than a system based on the determinations of various fact-finders ordinarily does. But we see it as implicit in the present statutory treatment of the exclusion for gifts, and in the variety of forums in which federal income tax cases can be tried. If there is fear of undue uncertainty or overmuch litigation, Congress may make more precise its treatment of the matter by singling out certain factors and making them determinative of the matter, as it has done in one field of the 'gift' exclusion's former application, that of prizes and awards. Doubtless diversity of result will tend to be lessened somewhat since federal income tax decisions, even those in tribunals of first instance turning on issues of fact, tend to be reported, and since there may be a natural tendency of professional triers of fact to follow one another's determinations, even as to factual matters. But the question here remains basically one of fact, for determination on a case-by-case basis.

"One consequence of this is that appellate review of determinations

in this field must be quite restricted. Where a jury has tried the matter upon correct instructions, the only inquiry is whether it cannot be said that reasonable men could reach differing conclusions on the issue. Baker v. Texas & Pacific R. Co., supra, [359 U.S.] at 228 [79 S.Ct. at 665]. Where the trial has been by a judge without a jury, the judge's findings must stand unless 'clearly erroneous.' Fed.Rules Civ.Proc., 52(a). 'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' United States v. United States Gypsum Co., 333 U.S. 364, 395 [68 S.Ct. 525, 542, 92 L.Ed. 746]. The rule itself applies also to factual inferences from undisputed basic facts, id., at 394 [68 S.Ct. at 541], as will on many occasions be presented in this area. Cf. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 609–610 [70 S.Ct. 854, 856, 94 L.Ed. 1097]. And Congress has in the most explicit terms attached the identical weight to the findings of the Tax Court. I.R.C., § 7482 (a)."

The value of a gift may be excluded from gross income only if the gift proceeds from a "detached and distinterested generosity" or "out of affection, admiration, charity or like impulses" and must be included if the claimed gift proceeds primarily from "the constraining force of any moral or legal duty" or from "the incentive of anticipated benefit of an economic nature." We must conclude that such criteria are clearly applicable to a charitable deduction under § 170.

In our view the Tax Court did not err in its construction of § 170(c) (2) (B) as applied to the facts of the instant case.

Finally, we consider whether the Tax Court erred in finding that "at least $400.00 of the amount paid by petitioners to the Society in 1958 was intended as payment in the nature of tuition for petitioners' children, a personal expense, and did not constitute a charitable deduction."

We must bear in mind that the schools operated by the Society were located in a community of small population in which the financial status of parents enrolling students in the schools was well known to the members of the Board of Trustees and members of the finance and enrollment committees of the Society. When asked whether any attempt was made to secure from parents a pledge for the total estimated cost per student (times the number of children who were enrolling), the treasurer of the Society testified:

> "That sort of depends on the parent. In a small community we knew pretty much the parents' financial arrangement, the situation they have, and if it is pretty well known they are not able to afford it, it is not even mentioned, but if it is known that they are pretty well-to-do, then the full amount is suggested."

Although the Society set no tuition fee, the record clearly shows that parents who could so afford were expected to contribute to the Society at least to the extent of the cost to the Society of providing their children with an education.

■ Under the circumstances disclosed by the record, the finding of the Tax Court that at least $400.00 of the amount paid by petitioners to the Society was in the nature of tuition fees for the education which the Society was expected to furnish to petitioners' children is not clearly erroneouus. The payment of such sum is not a charitable gift.

We have considered the decisions in Marshall v. Welch, 197 F.Supp. 874 (S.D. of Ohio, W.D., 1961) and, Estate of O. J. Wardwell, Deceased v. Commissioner, 301 F.2d 632 (8th Cir. 1962), urged upon us by the petitioners, but find them inapposite.

The decision of the Tax Court is affirmed.