SARAH MARQUIS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3298–66. Filed March 29, 1968.

*Isidore R. Tucker*, for the petitioner.
*Gerald Backer*, for the respondent.

696

OPINION

The decision in this case turns upon a determination as to the scope of the limitation contained in section 162(b).[4] Petitioner contends that her cash payments to charitable clients were part and parcel of her travel agency business and therefore did not constitute contributions or gifts deductible only under section 170, with the result that the limitation does not apply. Respondent counters with the assertion that the legislative history of section 162(b) and its predecessor sections, his own regulations, and a prior decision of this Court in *Wm. T. Stover Co.*, 27 T.C. 434 (1956), require that, in order to escape such limitations, payment must be made in exchange for a binding obligation on the part of the recipient. On all the facts and circumstances herein, we agree with the petitioner.

The genesis of section 162(b) is found in the area of contributions to charitable organizations by corporations. Prior to 1935, corporations were not permitted a deduction for charitable contributions as such. A deduction was allowed only if the test of an ordinary and necessary business expense was met. In this context, the courts evinced a lenient attitude in finding that the particular contributions had a business significance, merely requiring proof of "a benefit flowing directly to the corporation as an incident to its business." See *Willcuts* v. *Minnesota Tribune Co.*, 103 F. 2d 947, 952 (C.A. 8, 1939), and cases therein cited. It was enough if the court was satisfied that the contribution would not have been made "but for" the existence of a business relationship.

---

[4] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

      *        *        *        *        *        *        *

(b) CHARITABLE CONTRIBUTIONS AND GIFTS EXCEPTED.—No deduction shall be allowed under subsection (a) for any contribution or gift which would be allowable as a deduction under section 170 were it not for the percentage limitations, the dollar limitations, or the requirements as to the time of payment, set forth in such section.

In 1935, the income tax law was amended to limit deductions for charitable contributions by corporations to 5 percent of taxable income; no change was made in the subdivision allowing deductions for business expenses, seemingly because Congress thought that the specific 5-percent provision would control. When it appeared that the law needed clarification in this regard, it was recommended that "no deduction shall be allowed to corporations * * * [as a business expense] for any *contribution* * * * with respect to which a deduction is allowed * * * [as a charitable contribution]." (Emphasis supplied.) See Report of Subcommittee of Ways and Means Committee, 75th Cong., 3d Sess., p. 48 (Jan. 14, 1938), appearing in Seidman's Legislative History of Federal Income Tax Laws, 1938–1961, pp. 10, 11. This recommendation of the subcommittee was adopted by the full committee at the time of the enactment of section 23 (a) (2) of the Revenue Act of 1938 (ch. 289, 52 Stat. 447), with the following comment, heavily relied upon by respondent:

> The limitations of section 23 (a) (2) apply *only to payments which are contributions or gifts.* A deduction is not to be disallowed under section 23 (a) (2) of the bill merely because the recipient of amounts received from the corporation is a so-called charitable organization within the meaning of section 23 (q), *as, for example,* in the case of a payment by a mining company to a local hospital *in consideration of an obligation assumed* by the hospital to provide hospital services and facilities for the employees of the company. [Emphasis supplied.]

See H. Rept. No. 1860, 75th Cong., 3d Sess., pp. 17–18 (1938), 1939–1 C.B. (Part 2) 740.

The provision of section 23 (a) (2), which was codified the next year under the same section number in the International Revenue Code of 1939 and later designated section 23 (a) (1) (B), is as follows:

> (2) CORPORATE CHARITABLE CONTRIBUTIONS.—No deduction shall be allowable under paragraph (1) [ordinary and necessary business expense] to a corporation for any *contribution* or *gift* which would be allowable as a deduction under subsection (q) [charitable contributions] were it not for the 5 per centum limitation therein contained and for the requirement therein that payment must be made within the taxable year. [Emphasis supplied.]

Respondent's Regulations 101 issued in 1939 is implementation of this provision specified (p. 61):

> Art. 23 (a)–13. Corporate contributions.—No deduction is allowable under section 23 (a) for a *contribution* or *gift* by a corporation if any part thereof is deductible under section 23 (q). * * *
>
> *The limitations provided in paragraph (2) of section 23 (a) and in this article apply only to payments which are in fact contributions or gifts to organizations described in section 23 (q).* For example, payments by a street railway corporation to a local hospital (which is a charitable organization within the meaning of section 23 (q)) in consideration of a binding obligation on the part of the hospital to provide hospital services and facilities for the corporation's employees are not contributions or gifts within the meaning of section 23 (q) and may be

deductible under section 23(a) if the requirements of that section are otherwise satisfied. * * *

[Emphasis supplied.]

The foregoing provision was reissued *verbatim* as section 19.23(a)-13 of Regulations 103 (1940), section 29.23(a)-13 of Regulations 111 (1943), and section 39.23(a)-13 of Regulations 118 (1953).

At the time of the enactment of the 1954 Code, the limitation of section 23(a)(1)(B) was incorporated into section 162(b) and extended to cover individuals as well as corporations. In so doing, the legislative committees made reference generally to the deductibility of "contributions" within a context of rendition of services (see H. Rept. No. 1337, 83d Cong., 2d Sess., p. 20 (1954), S. Rept. No. 1622, 83d Cong., 2d Sess., p. 22 (1954)), but went on to elaborate on their intention as follows:

Subsection (b) is derived from section 23(a)(1)(B) of the 1939 code. This section provides that no business deduction is available for any *contribution* which would be deductible as a charitable *gift*, were it not for the percentage *limitation on such gifts.* This was the rule for corporations under section 23(a) (1)(B) of the 1939 Code and this section now extends the rule to individuals. *No substantive change is made in the application of this rule. As under present law, it applies only to gifts, i.e., those contributions which are made with no expectation of a financial return commensurate with the amount of the gift. For example,* the limitation would not apply to a payment by an individual to a hospital in consideration of a binding obligation to provide medical treatment for the individual's employees. It would apply only if there were *no expectation of any quid pro quo* from the hospital. [Emphasis supplied. See H. Rept. No. 1337, 83d Cong., 2d Sess., p. A44 (1954) ; S. Rept. No. 1622, *supra.*]

In promulgating new regulations under the 1954 Code, respondent merely republished its existing regulations, modified to reflect the new section numbers and the extension of the coverage of section 162(b) to individuals. Sec. 1.162-15(a), Income Tax Regs.

Respondent asserts that the foregoing legislative history, reinforced by its longstanding regulations, requires that, since the recipients herein were under no binding obligation to furnish any quid pro quo to petitioner, the payments in question must necessarily be considered contributions or gifts and therefore subject to the limitation of section 162(b).

We think respondent has interpreted both the legislative history and his own regulations too narrowly. The "hospital" situations—concededly obvious cases—are illustrative rather than definitive. If there were any doubt on this score, it is removed by the language of the legislative committee reports at the time of the enactment of section 162(b), which reports categorically stated that no substantive change in the law was intended, continued to emphasize that the limitation was to apply to "contributions," and added the clarifying standard of "no expectation of any quid pro quo." See H. Rept. No. 1337, *supra;* S. Rept. No. 1622, *supra.*

The foregoing analysis leads to the conclusion that the limitation on the deduction of charitable contributions as business expenses was designed to tighten the "but for" test used in the earlier cases to determine the deductibility of such payments. Since 1938, that test has clearly not been the critical benchmark. On the other hand, neither the statute, the legislative history, nor respondent's regulations require the existence of a binding obligation on the part of the recipient organization as a precondition to deductibility.

Our decision in *Wm. T. Stover Co., supra*, is clearly distinguishable. In the first place, there was a specific finding of fact, in that case, that the payments were "contributions." Secondly, the facts that the taxpayer therein did business with the recipients (three hospitals), that such business increased, and that the making of the apparently non-recurring contributions was "cold-blooded business" did no more than indicate [5] to the Court that the payments were "closely related to the corporate business" (see 27 T.C. at 442). Or, to put it another way, we did no more than indicate that the lenient "but for" test had been met—a test which, as we have already indicated, was an insufficient standard in the taxable years involved therein. See above. At no point did we delineate any requirement of a binding obligation as a prerequisite to escaping the clutches of the charitable contribution limitation on otherwise deductible business expenses.[6]

Against the foregoing background, we summarize the salient facts herein.

Petitioner's charitable clients were numerous (some 30 in all) and bookings in connection with their organizationally sponsored trips represented a very substantial part of her business (57 percent of her total billings). She had direct and continuous business dealings with them. Moreover, she contributed to the charities with which she was otherwise identified. On a recurring basis, she made payments of the type in question (including payments during the taxable years involved herein), not only in the expectation that she would continue to obtain business from the recipient, but because she could well have lost such business if she had stopped. The payments were directly keyed to

---

[5] There is also no indication of the relationship of the amounts given to the amount or profitability of the business received.

[6] *Hartless Linen Service Co.*, 32 T.C. 1026 (1959), *United States Potash Co.*, 29 T.C. 1071 (1958), and *McDonnell Aircraft Corporation*, 16 T.C. 189, 199 (1951), which also applied the limitation but which were not cited by respondent, are likewise distinguishable, either because there was not even an expectation of benefit or because payments were made to promote community projects where the taxpayers' businesses were located and the benefits to those businesses were peripheral at best. Moreover, in all of the foregoing cases, the contributions appear to have been nonrecurring and to have been made to only one or two recipients.

the amount, character, and profitability of the business which petitioner obtained and expected to obtain from the charitable clients. Petitioner had no other feasible means of reaching these clients through normal advertising channels. Cf. *Hartless Linen Service Co.*, 32 T.C. 1026, 1030 (1959). In short, petitioner's charitable clients represented a substantial, continuing, integral part of her business.[7] They were in every sense petitioner's bread and butter.

As we see it, the key question is whether, in the words of section 162(b) itself, the payment is a "contribution or gift which would be allowable * * * under section 170." The same phrase, i.e., "contribution or gift," is used in section 170(c) and, in view of the express reference to section 170 in section 162(b), we perceive no valid reason for according it a different meaning in one place as against the other, a path which respondent's argument seemingly suggests that we follow.

In so concluding, we need not go so far as to suggest that the narrow test of "detached and disinterested generosity," often applied in cases involving the excludability of gifts from income, is the determinant of a charitable contribution. Compare *Commissioner* v. *Duberstein*, 363 U.S. 278 (1960), *Publishers New Press, Inc.*, 42 T.C. 396 (1964), and *Max Kralstein*, 38 T.C. 810 (1962), with *Channing* v. *United States*, 4 F. Supp. 33 (D. Mass. 1933), affirmed per curiam 67 F. 2d 986 (C.A. 1, 1933), *DeJong* v. *Commissioner*, 309 F. 2d 373 (C.A. 9, 1962), affirming 36 T.C. 896 (1961), and *Crosby Valve & Gage Co.*, 46 T.C. 641 (1966), affirmed on other grounds 380 F. 2d 146 (C.A. 1, 1967). Indeed, as we have previously pointed out, the principles underlying the gift exclusion decisions may not be fully applicable in the area of charitable contributions. See *United States* v. *Transamerica*, 392 F. 2d 522 (C.A. 9, 1968); *Jordan Perlmutter*, 45 T.C. 311, 317 (1965). At the same time, we are unwilling to go to the other extreme and adopt respondent's standard that a payment must be considered a charitable contribution unless there is a binding obligation on the part of the recipient to furnish a quid pro quo. Such a standard would enlarge the area of allowable deductions for charitable contributions far beyond its present scope to include payments where elements of compulsion and anticipated benefit existed but a binding obligation on the part of the recipient organization was lacking. *Jordon Perlmutter*, *supra;* see *Crosby Valve & Gage Co.* v. *Commissioner*, 380 F. 2d 146 (C.A. 1, 1967). We need go no further than to hold that, under all the circumstances herein, it would stretch credulity to characterize the

---

[7] At no point herein has respondent questioned the reasonableness of the payments nor has he suggested that the payments be regarded as capital expenditures for goodwill.

payments at issue as "contributions."[8] See *Jordon Perlmutter, supra* at 317, cf. *B. Manischewitz Co.*, 10 T.C. 1139 (1948).

Since petitioner has conceded other adjustments,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

---

[8] We are aware that "Donations to organizations other than those described in section 170 which bear a direct relationship to the taxpayer's business and are made with a reasonable expectation of a financial return commensurate with the amount of the donation" may be allowable business deductions under sec. 1.162–15(b) of respondent's regulations. By our decision herein, we neither imply nor decide that the same standard would permit the avoidance of the limitation of sec. 162(b) with respect to payments to sec. 170 organizations in the course of a business relationship—at least where such payments are nonrecurring, the number of recipients is small, and the relationship to the amount of business transacted is not clearly defined.