The **SINGER COMPANY**

v.

The **UNITED STATES.**

No. 344–64.

United States Court of Claims.
Oct. 15, 1971.

**414**

John J. Boland, New York City, attorney of record, for plaintiff. William W. Karatz and Hugh M. Dougan, New York City, of counsel.

Theodore Peyser, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Johnnie M. Walters, for defendant. Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

---

* We are indebted to Trial Commissioner George Willi for his findings of fact, which have been adopted in nearly their entirety and have made the writing of this opinion considerably easier.

1. All citations to Code sections hereinafter are, unless otherwise indicated, in reference to the Internal Revenue Code of 1954.

2. "Sec. 170. Charitable, etc., contributions and gifts.

## OPINION *

LARAMORE, Judge.

This is an action to recover alleged overpayments of Federal income taxes paid by plaintiff for the tax year of 1954. The amount in controversy involves a refund of $510,762.73, plus statutory interest on the amount of recovery. The determination of whether or not plaintiff is entitled to recover said amount is based on sections 170 and 162(b) [1] and whether, pursuant to section 170,[2] plaintiff is entitled to claim a deduction for charitable contributions made in the form of discounted sales of its most famous product, *i. e.*, sewing machines.

The resolution of the above posed issue will be made in reference to what will be hereinafter referred to as the (1) school discounts and (2) discounts to charities other than schools. As for the school discounts, it is our holding that the benefits to be derived from such discounts were substantial enough to supply the plaintiff with a *quid pro quo* for the discount which, in turn, effectively destroyed the discounts charitable nature. However, as for the discounts to charities other than schools, we hold that the benefits derived from such discounts were merely incidental to the making of the transfer and not substantial enough to destroy the charitable contribution characterization.

### Historical Background

As has already been noted, plaintiff is, among many other things, a manufacturer and supplier of sewing machines to both the domestic and foreign markets. It was originally formed in 1863 as "The Singer Manufacturing Company," a New

"(a) Allowance of deduction.—
"(1) General rule.—There shall be allowed as a deduction any charitable contribution (as, defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate."

York corporation, the state in which it operated until moving across the river to New Jersey. In 1873, the time of moving, the New York corporation was dissolved and a New Jersey corporation was formed under the same name as was used in New York. It was not until much later, in 1963, that plaintiff's name was changed to "The Singer Company" as it appears in this case.

Today, and during the year in issue, plaintiff is a thoroughly integrated corporation which handles all phases of its sewing machine business. However, it did not always operate in its present format. For example, during the year in question, 1954, plaintiff distributed its product through a wholly owned subsidiary, called "Singer Sewing Machine Company" (hereinafter referred to as "SSMCo" or "Singer"), a New Jersey corporation. It is this subsidiary that sold and distributed the machines here in question and consequently all further references to The Singer Company, as plaintiff, will be to this portion of a much more diversified corporation.

### The Discounted Sales

During the year in question plaintiff, through SSMCo, sold 584,740 Singer sewing machines in the United States which produced a gross sales figure of $120,853,921, of which 491,005 were new machines. Of the new machines, 93.7 percent, or 460,191 were sold to the general public at plaintiff's established retail price. An additional 1,450 machines were sold in the normal course of plaintiff's business but at a price which was 10 percent less than retail. The remaining 29,364 new machines' (6 percent of the year's total) were sold to purchasers, not in plaintiff's ordinary course of business and to purchasers who received various discounts. Those purchasers, along with the percentage of discount, were as follows:

| Category | Discount from Published List price |
|---|---|
| (a) Employees of the Singer organization with more than six months of service. | 30 percent |
| (b) Foreign diplomats | 20 percent |
| (c) Clothing manufacturers using Singer industrial machines. | 15 percent |
| (d) Home economics (sewing) teachers | 20 percent |
| (e) Churches and charitable organizations (other than governments, schools, hospitals, and Red Cross.). | 25 percent |
| (f) Red Cross | 45 percent |
| (g) Government and nonprofit hospitals | 45 percent |
| (h) Government agencies (federal, state, county, and municipal). | 45 percent |
| (i) Public and parochial schools (*i. e.*, schools and colleges under federal, state, county, municipal, and parochial administration). | 45 percent |
| (j) Salaried county home demonstration agents and 4–H girls club leaders who devote entire time to extension service and need portable machines for use in their work (limited to portable machines). | 45 percent |
| (k) Army PX's and Navy Ship Stores | 20 percent |

The total amount of machines that were sold to charitable type organizations listed above was 25,309.[3] Of that total, 21,070 new machines were sold to public and parochial schools at prices aggregating $2,733,750 or $818,535.11 below the then fair market value. These sales were made at break even prices and resulted in no over-all immediate net profit or loss to plaintiff. As can be seen from the chart, the discount for the school group was 45 percent. The plaintiff also sold 4,239 machines to charities other than the aforementioned school group. This included (1) churches and charitable organizations (other than governments, schools, hospitals, and the Red Cross); (2) the Red Cross; (3) government and non-profit hospitals; and (4) government agencies (Federal, state, county and municipal). Discounts received, as shown by the chart, were all 45 percent except for category (1) above, which received a 25 percent discount. The total moneys received from the non-school charity discount sales amounted to $529,875 which was $127,321.80 below the then fair market value of the machines. Thus, the total discounts allowed to those organizations enumerated by section 170(c) for the taxable year 1954 aggregated $945,856.91 which would produce a reduction in taxes paid of $510,762.73.[4] Said reduction would occur if plaintiff were allowed to deduct these discounts on its amended return.

The original Federal income tax return, a consolidated return, filed by plaintiff, included SSMCo within plaintiff's affiliated group. Said return was timely filed with the District Director of Internal Revenue at Newark, New Jersey and made pursuant to the provisions of sections 1501 and 6012(a) of the 1954 Code which provide for the privilege and responsibility of filing a consolidated return.

Subsequent to the filing of said return, the Commissioner of Internal Revenue conducted an audit which resulted in the assessment of certain income tax deficiencies (with interest thereon) which are not here in issue.[5] Thereafter, on December 17, 1962, and within two years from the date on which plaintiff had paid said income tax deficiencies, plaintiff filed a claim for refund (Form 843) for the taxable year 1954 in the amount of $525,640.43, plus interest, or such greater amount as may be legally refundable. Of this total, $14,878.20 related to foreign tax credits which are no longer in issue. The balance of plaintiff's claim was based on the discounts to charitable organizations heretofore described and not theretofore claimed as a charitable contribution deduction on any of plaintiff's income tax returns. The amount of the claimed deduction, $945,856.91, plus that amount of charitable contributions made by plaintiff's affiliated group other than the

3. The parties have stipulated that those organizations listed above in categories (e) through (i) are the type that are described in section 170(c) and thereby qualify as charitable organizations for purposes of section 170(a).

4. Defendant points out in its brief that the findings from which these figures were taken do not show the total discounts but instead represent the total discounts allowable by section 170(b)(2) which limits a corporation's total charitable deductions to a figure not to exceed five percent of the taxpayer's taxable income.

5. The following income tax deficiencies with respect to the year 1954 and the following amounts of interest thereon were paid by plaintiff:

| | | | |
|---|---|---|---|
| January 31, 1961 | Tax | | $1,100,000.00 |
| February 28, 1961 | Tax | | 398,861.80 |
| May 15, 1961 | Interest | | 530,341.45 |
| February 13, 1962 | Tax | | 15,123.17 |
| February 13, 1962 | Interest | | 3,623.10 |

amount here in issue, does not exceed five percent of plaintiff's 1954 taxable income, as computed under section 170 (b) (2) of the Code.[6]

Following the denial of the above noted claim for refund, suit was instituted in conformity with the provisions of sections 6532 and 7422 of the Code and jurisdiction of this court was invoked under Title 28 U.S.C. § 1346 and § 1491 (1954). Upon the filing of suit, our Commissioner Willi, after hearing testimony and considering all the evidence, submitted his findings of fact under Rule 134(h) of this court. Because of those findings, which we substantially adopt, and the nature of the case, the opinion will deal first with the issue in terms of the school discounts and secondly in reference to the discounts to charities other than schools.[7]

However, before proceeding to resolve the issue, it should be noted that the parties have agreed that the organizations to which the discounts here in question were made are within section 170(c). Furthermore, there will be no further discussion concerning the question of the fair market value of plaintiff's machines as it relates to the bargain sales here in question. We are not persuaded by the defendant's argument that the sales in question were not made at a bargain and therefore no deduction should be allowed. We arrive at this conclusion by referring to Treasury Regulation 1.170–1(c) (1) of the Internal Revenue Code of 1954 dealing with the contribution of property and describing the method for determining the value of property contributed. That regulation states, in its pertinent part, that:

(c) *Contribution in property*—(1) *General rules.* If a contribution is made in property other than money, the amount of the deduction is determined by the fair market value of the property at the time of the contribution. The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts. If the contribution is made in property of a type which the taxpayer sells in the course of his business, the fair market value is the price which the taxpayer would have received if he had sold the contributed property in the lowest usual market in which he customarily sells, at the time and place of the contribution (and in the case of a contribution of goods in quantity, in the quantity contributed). The usual market of a manufacturer or other producer consists of the wholesalers or other distributors to or through whom he customarily sells, unless he sells only at retail in which event it is his retail customers. If a donor makes a charitable contribution of, for example, stock in trade at a time when he could not reasonably have been expected to realize its usual selling price, the value of the gift is not the usual selling price but is the amount for which the quantity of

---

6. "(b) Limitations—
   "(2) Corporations.—In the case of a corporation, the total deductions under subsection (a) for any taxable year shall not exceed 5 percent of the taxpayer's taxable income * * *."

7. It should be pointed out that the type of problem hereinafter discussed is limited to those years prior to the Tax Reform Act of 1969, Public Law 91–172, § 201(a), which added the following subsection (e) to section 170 of the 1954 Code:
   "(e) Certain contributions of ordinary income and capital gain property.—

"(1) General Rule.—The amount of any charitable contribution of property otherwise taken into account under this section shall be reduced by the sum of—
   "(A) the amount of gain which would not have been long-term capital gain if the property contributed had been sold by the taxpayer at its fair market value (determined at the time of such contribution), * * *."
   For an informative discussion of the effects of this new section, together with its relation to section 1011(b), added by section 201(f) (2) of Public Law 91–172, *supra, see,* Taggart, The Charitable Deduction, 26 Tax L.Rev. 63 (1970).

merchandise contributed would have been sold by the donor at the time of contribution. * * *.

■■ It is our opinion that this regulation together with our commissioner's finding that "only plaintiff's retail sales to the public were arm's-length transactions in the regular course of business reflecting the fair market value of the machines involved" (finding 14, *infra*) requires us to find that the sales were, in fact, made at a bargain. In so rejecting defendant's position we are merely standing firm to the proposition that in determining fair market value one must look at "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts." Reg. § 1.170–1(c) (1); § 20.2031–1(b); § 25.2512–1. *See also*, Mertens, Law of Federal Income Taxation (1970 Rev.), 59.07; Champion v. Commissioner of Internal Revenue, 303 F.2d 887 (5th Cir. 1962); Daniel S. McGuire, 44 T.C. 801 (1965), acq., 1966–1 Cum.Bull. 2. Thus we will proceed to discuss those questions which pose greater difficulties in resolution.

### The Issue

The issue then, to make our problem perfectly clear, is whether the plaintiff can deduct, as charitable contributions in the form of bargain sales, the discounts as heretofore described. Having disposed of any problems with reference to the organizations which received the discounts, as well as recognizing that if all other requirements are met a bargain sale may produce a charitable contribution (Reg. § 1.170–1(c), *supra*), the resolution of said issue depends then on considerations which involve the definition of a gift.

### Defendant's Case: Definition of Gift

It has been advocated by the defendant that this case should be decided on the basis of the decision in Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). In that case, which has become an "old saw" to tax lawyers, the issue was whether Mr. Duberstein would be permitted to exclude from his taxable income the value of an automobile given to him by a business associate. Such an exclusion would have been pursuant to section 102(a).[8] To resolve that issue the Supreme Court formulated a definition of a gift. The Court did so to assist them, and others, in deciding the issue under section 102(a). That definition included the following language which has become standard in many cases to be cited hereafter. Said formulation was "[a] gift in the statutory sense, on the other hand, proceeds from a '*detached and disinterested generosity*', Commissioner of Internal Revenue, v. LoBue, 351 U.S. 243, 246, 76 S.Ct. 800, 803, 100 L.Ed. 1142 '*out of affection, respect, admiration, charity or like impulses*'. Robertson v. United States [343 U.S. 711], at 714, 72 S.Ct. 994, 96 L.Ed. 1237." (*Duberstein, supra*, at 285, 80 S. Ct. at 1197, emphasis supplied). It is this language that later cases have used, not to define "gift" for purposes of section 102(a), but for purposes of defining "gift" as used in section 170(c). *See*, Transamerica Corporation v. United States, 392 F.2d 522 (9th Cir. 1968); De-Jong v. Commissioner of Internal Revenue, 309 F.2d 373 (9th Cir. 1962). This is also the definition of "gift" that the defendant would have us follow in this case even though here we are dealing with section 170.

If we were to accept the definition of gift as it is proffered by defendant, it would then be necessary for us to look to the subjective intent of the plaintiff when awarding discounts to organizations described by section 170(c). This would not be an impossible task, but it would indeed be a very difficult one. It would necessitate a determination of whether plaintiff gave the discounts be-

---

8. "(a) General Rule.—Gross income does not include the value of property acquired by gift, bequest, devise, or inheritance."

cause they were primarily motivated by business considerations or, conversely, because of "detached and disinterested generosity" and out of "affection, respect, admiration, charity or like impulses." (*Duberstein, supra,* 363 U.S. at 285, 80 S.Ct. at 1197). This determination, asserts plaintiff, need not, and should not be made.

### Plaintiff's Case

As an alternative to the subjective approach described above plaintiff argues that (1) the definition of "gift" as used in *Duberstein, supra,* does not apply to "gift" in a charitable contribution case and (2) that voluntary contributions are governed solely by I.R.C. section 170; and therefore contributions to charities should not be considered as business expense deductions under I.R.C. sections 162(a) and 162(b) unless there is a specific and direct *quid pro quo* flowing from the transfer.

### Application of Section 162(b)[9]

As plaintiff most eloquently points out, deductions for charitable contributions by corporations were originally not allowed by the Internal Revenue Code. However, in 1935, with the enactment of the Revenue Act of 1935, section 102(c), Public Law 74–407, 49 Stat. 1014 (adding subsection (r) to section 23 of the Revenue Act of 1934), corporations were permitted to deduct charitable contributions not in excess of five percent of their net income. Plaintiff also shows that following the enactment of section 102(c) of the 1935 Act, *supra,* a corporation had the distinct advantage of not only deducting charitable contributions to the extent of five percent of its net income but also deducting charitable contributions in excess of five percent if it could show that the contribution was beneficial to the corporation or represented consideration for benefits flowing

to the corporation. *See,* Fairmont Creamery Corp. v. Helvering, 67 App. D.C. 66, 89 F.2d 810 (1937). Therefore, in 1938, Congress eliminated this advantage by enactment of section 23(a) (2) of the Revenue Act of 1938, Public Law 75–554, 52 Stat. 447, 460, which provided that

No deduction shall be allowable under paragraph (1) to a corporation for any contribution or gift which would be allowable as a deduction under subsection (q) were it not for the 5 per centum limitation therein contained and for the requirement therein that payment must be made within the taxable year.

The above section has been continued throughout subsequent revisions of the Internal Revenue Code and appears in substantially the same form today. *See,* section 162(b) of the Internal Revenue Code of 1954, *supra.* In addition, plaintiff indicates that the regulation promulgated to assist taxpayers in their understanding of this subsection, first appearing as Regulation 101, Art. 23(a) (13), interpretive of the 1938 Act, *supra,* has been perpetuated in nearly the identical form in which it first appeared. That regulation, now Treasury Regulation 1.162–15, in its pertinent part, reads as follows:

§ 1.162–15.  Contributions, dues, etc.

(a) *Contributions to organizations described in section 170*—(1) *In general.* No deduction is allowable under section 162(a) for a contribution of gift by an individual or a corporation if any part thereof is deductible under section 170. For example, if a taxpayer makes a contribution of $5,000 and only $4,000 of this amount is deductible under section 170(a) (whether because of the percentage limitation under either section 170(b) (1) or (2), the requirement as to time of payment, or both) no deduction is allow-

---

9.  Section 162(b) provides:
   "Charitable contributions and gifts excepted.—No deduction shall be allowed under subsection (a) for any contribution or gift which would be allowable

as a deduction under section 170 were it not for the percentage limitations, the dollar limitations, or the requirements as to the time of payment, set forth in such section."

able under section 162(a) for the remaining $1,000.

(2) *Scope of limitations.* The limitations provided in section 162(b) and this paragraph apply only to payments which are in fact contributions or gifts to organizations described in section 170. For example, payments by a transit company to a local hospital (which is a charitable organization within the meaning of section 170) in consideration of a binding obligation on the part of the hospital to provide hospital services and facilities for the company's employees are not contributions or gifts within the meaning of section 170 and may be deductible under section 162(a) if the requirements of section 162(a) are otherwise satisfied.

Furthermore, when Congress put together the Internal Revenue Code of 1954, the following statement was made in reference to section 162(b) of the Internal Revenue Code:

Subsection (b) is derived from section 23(a) (1) (B) of the 1939 Code. This section provides that no business deduction is available for any contribution which would be deductible as a charitable gift, were it not for the percentage limitation on such gifts. This was the rule for corporations under section 23(a) (1) (B) of the 1939 Code and this section now extends the rule to individuals. No substantive change is made in the application of this rule. *As under present law, it applies only to gifts, i. e., those contributions which are made with no expectation of a financial return commensurate with the amount of the gift.* For example, the limitation would not apply to a payment by an individual to a hospital in consideration of a binding obligation to provide medical treatment for the individual's employees. It would apply only if there were no expectation of any *quid pro quo* from the hospital. [H.Rep.No. 1337, 83rd Cong., 2nd Sess., p. A44 (3 U.S.C.C.A.N. (1954) pp. 4017, 4180); S.Rep.No.1622, 83rd Cong,. 2nd Sess., p. 196, 3 U.S.C.C.A.N. (1954) pp. 4621, 4830–4831.] [Emphasis supplied]

From the above statement, plus various other sources to be mentioned hereinafter, plaintiff has built the argument that I.R.C. section 162(b) is to be applied only when the transfers or contributions of property are made with the expectation of a *"specific* and *direct quid pro quo."* This plaintiff gleans not only from the "hospital" example used by the Regulation 1.162–15(a) (2), *supra*, and the legislative statement cited above, but also from various cases, cited by plaintiff; *e. g.*, McDonnell Aircraft Corporation, 16 T.C. 189 (1951); William T. Stover Co., Inc., 27 T.C. 434 (1956); Hartless Linen Service Company, 32 T.C. 1026 (1959); and United States Potash Company, 29 T.C. 1071 (1958). However, notwithstanding plaintiff's thorough analysis of section 162(b), we are of the opinion that neither the example used by the regulation cited nor the cases referred to us support plaintiff's ultimate proposition. We are of the opinion that plaintiff's analysis, concluding with the *specific* and *direct quid pro quo* requirement, is overly restrictive and quite narrow. In this opinion we are supported by the language of the legislative committee reports put together at the time of enacting I.R.C. section 162 (b) wherein the language emphasized that the limitation was to apply to "gifts", adding that gifts are contributions made with no expectation of financial return commensurate with the amount of the gift. *See,* S.Rep.No.1622, *supra. See also,* Sarah Marquis, 49 T.C. 695 (1968) wherein the Tax Court found that section 162(b) was not applicable solely to those cases where the *quid pro quo* had been specifically contracted for. In that case, the Tax Court rejected such a position as being a narrow interpretation of the regulations by the Commissioner and found that the taxpayer could deduct payments to charitable organizations as a business expense. *Marquis*, although not directly in point here since plaintiff does not advocate the necessity of a contract, strengthens our posi-

tion by showing that there is a propensity to construe section 162(b) too narrowly. Just as the Commissioner of Internal Revenue so construed the section and its regulation, we feel plaintiff here has narrowly construed I.R.C. section 162(b) and the regulation pursuant thereto.

■ By concluding as we do with reference to section 162(b) we, in effect, reject plaintiff's first argument that section 170 has *exclusive* control over all voluntary and gratuitous transfers to charities. In other words, we are of the opinion that if the transfer to a charitable organization does not qualify as a section 170 type deduction because it is made with expectations of financial return commensurate with the gift, it might be deductible under section 162 (a), if all other requirements are met.[10] This is the case even if the benefits expected do not flow *directly* from the transferee and even though the transfer was made without compulsion. This position is entirely consistent with the statutory scheme and in our opinion, makes for a much more efficient and workable solution to this type of case than does the test proposed by plaintiff. Moreover, it is consistent with our opinion on plaintiff's argument as to the definition of a "gift" as developed by the *Duberstein* case.

### Application of Duberstein

That position, to reiterate, is that the definition of a "gift", as enunciated by the *Duberstein* case, *supra,* has no relevance to the definition of a "gift" in respect to a charitable contribution pursuant to I.R.C. section 170. In particular, plaintiff argues that the "disinterested generosity" standard, which was alluded to by *Duberstein, supra,* and frequently used thereafter, should not be applied to business corporations.

One of the most persuasive arguments plaintiff makes in the case against "dis-

interested generosity" is that those provisions which allow exclusions from gross income are matters of "legislative grace" and subject to narrow construction. (*See,* Mertens, Law of Federal Income Taxation, sections 3.07, 3.08 (1969 Rev.), 25.03 (1966 Rev.). One such provision, plaintiff points out, is I.R.C. section 102 (a). However, and unlike section 102 (a), the allowance for charitable contributions has been referred to as a "liberalization[s] of the law in the taxpayer's favor, * * * begotten from motives of public policy, and * * * not to be narrowly construed." Helvering v. Bliss, 293 U.S. 144, 151, 55 S.Ct. 17, 21, 79 L.Ed. 246 (1934). *See also,* Old Colony Trust Co. v. Commissioner of Internal Revenue, 301 U.S. 379, 57 S.Ct. 813, 81 L.Ed. 1169 (1937); Pleasants v. United States, 22 F.Supp. 964, 86 Ct.Cl. 679 (1938), aff'd 305 U.S. 357, 59 S.Ct. 281, 83 L.Ed. 217 (1939). Therefore, the definition of a gift, plaintiff asserts, as applied to a section to be narrowly construed, *i. e.,* I.R.C. section 102(a), should have no effect on a section which is a liberalization of the tax law.

Notwithstanding plaintiff's approach to this problem, it appears that the case law in this area has not entirely agreed with the proposition advocated by plaintiff. For example, in the Ninth Circuit Court of Appeals, DeJong v. Commissioner of Internal Revenue 309 F.2d 373 (9th Cir. 1962), aff'g, 36 T.C. 896 (1961) the test of "disinterested generosity" was applied to a section 170 charitable contribution question. It was also applied in reference to section 170 in Transamerica Corporation v. United States, 254 F.Supp. 504 (N.D.Cal.1966), a lower court decision influenced by the *DeJong* case and later criticized with new reasoning injected by the Ninth Circuit, *see,* 392 F.2d 522 (9th Cir. 1968). Moreover, the Tax Court has used the disinterested generosity test in "section 170 cases" such as S. M. Howard, 39 T.C. 833 (1963); Crosby Valve & Gage Com-

---

10. It should be explained that plaintiff, in this action, does not claim a business expense deduction under I.R.C. section 162(a) and consequently we do not pass on that question.

pany, 46 T.C. 641 (1966), which was later affirmed but on a basis other than that used in *Duberstein*, 380 F.2d 146 (1st Cir. 1967), cert. denied, 389 U.S. 976, 88 S.Ct. 477, 19 L.Ed.2d 468 (1967). More recently the Tax Court has applied the disinterested generosity test in Donald W. Fausner, 55 T.C. 620 (1971) and Harold E. Wolfe, 54 T.C. 1707 (1970).

On the other hand, the "disinterested generosity" test, in reference to business corporations, has been specifically rejected in the appeal of *Crosby Valve & Gage Company, supra; Transamerica, supra*; and weakened in Sarah Marquis, 49 T.C. 695 (1968). *See also*, Estate of O. J. Wardwell v. Commissioner of Internal Revenue, 301 F.2d 632 (8th Cir. 1962), rev'g, 35 T.C. 443 (1960); Citizens & Southern National Bank of South Carolina v. United States, 243 F.Supp. 900 (W.D.S.C.1965); Jordan and Essie Perlmutter et al., 45 T.C. 311 (1965) and a Law Review Note, "Disinterested Generosity: An Emerging Criteria of Deductibility Under Section 170," 1968 Utah Law Review 475. The test, discussed in the above cases, as well as others not cited herein, is obviously not one that can be applied with the assumption that the most judicious approach to the problem has been used. It is for the above reason, plus a feeling of uneasiness about using such an approach, that we avoid resting our decision on the "disinterested generosity" rules.

Indeed, we are not the first court to refuse to apply the *Duberstein* rationale. *See, Marquis, supra*; Stubbs v. United States, 428 F.2d 885 (9th Cir. 1970), cert. denied, 400 U.S. 1009, 91 S.Ct. 567, 27 L.Ed.2d 621 (1971); Jerome Scheffres, 28 CCH T.C.Mem.Dec. 234 (1969); Ben I. Seldin, 28 CCH T.C.Mem.Dec. 1215 (1969); Jefferson Mills, Inc. v. United States, 367 F.2d 392 (5th Cir. 1966); Wegner v. Lethert, 67–1 U.S.T.C. ¶9229 (D.Minn.1967). In most of those instances where the disinterested generosity test has not been used the cases have dealt with the question of deductibility of a transfer as a "gift" in terms of whether the transferor received, or

expected to receive, something in return for that transfer. If the transfer was made with the expectation of receiving something in return as a *quid pro quo* for the transfer then in such an instance the I.R.C. section 170 deduction was denied. *Marquis, supra; Perlmutter, supra; Transamerica, supra; Stubbs, supra. See also*, Allis-Chalmers Mfg. Co. v. United States, 200 F.Supp. 91 (E.D. Wisc.1961). The denial of a charitable contribution on such a basis also finds support in earlier cases such as Bogardus v. Commissioner of Internal Revenue, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32 (1937) and Channing v. United States, 4 F.Supp. 33 (D.Mass.1933), aff'd per curiam, 67 F.2d 986 (1st Cir. 1933), cert. denied, 291 U.S. 686, 54 S.Ct. 563, 78 L.Ed. 1072 (1934), and in the legislative history of the Internal Revenue Code of 1954 where it was stated that charitable gifts are "those contributions which are made with no expectation of a financial return commensurate with the amount of the gift." H.Rep.No.1337, *supra*; S.Rep.No.1622, *supra*.

■ Plaintiff does not disagree that the above described alternative to the "disinterested generosity" test is relevant. It does, however, reduce that alternative to the rather narrow interpretation advocated in reference to section 162(b), *supra*. That is, plaintiff would have us decide the case by distinguishing between a *direct* or *indirect* benefit derived. In other words, plaintiff would say that if the transferor received, or expected to receive, benefits from a transfer to a charitable transferee, which benefits were to be received only *indirectly*, then regardless of the magnitude of those benefits, the transfer would still qualify as a charitable contribution deduction under section 170. However, if those same benefits were received, or expected to be received, *directly* from the transferee, plaintiff would concede that, given a substantial *quid pro quo*, the transfer would not come within the definition of a "gift" or "contribution" for purposes of deductibility under section 170. Obviously, we cannot

agree with plaintiff's distinction. It is our opinion that if the benefits received. or expected to be received, are substantial, and meaning by that, benefits greater than those that inure to the general public from transfers for charitable purposes (which benefits are merely *incidental* to the transfer), then in such case we feel the transferor has received, or expects to receive, a *quid pro quo* sufficient to remove the transfer from the realm of deductibility under section 170. With this standard, we feel that the subjective approach of "disinterested generosity" need not be wrestled with and we are of the opinion that our approach coincides perfectly with our reading of section 162(b). Moreover, we do not feel that this approach differs with, or in any way conflicts with, pronounced policies of the Internal Revenue Service. For example, in Revenue Ruling 67–446, 1967–2 Cum.Bull. 119, the Service was concerned with the deductibility of contributions to a city by a number of taxpayers; the contributions were used for removal of an unused and unsightly railroad terminal. In allowing the charitable contribution deduction, the Commissioner stated:

> Although the merchants and owners of property in the central shopping area may receive some benefit from the removal of the railroad facilities from the city, such benefit, if any, is incidental in the comparison to the benefits accruing to the public at large.

Likewise, we do not feel that Revenue Ruling 68–314, 1968–1 Cum.Bull. 101 (as superseded by Revenue Ruling 68–658, 1968–2 Cum.Bull. 119) is inconsistent with our approach mainly because the ruling was issued in relation to an issue unrelated to the issue dealt with here. Secondly, in Situation (2) of Rev.Rul. 68–314, the one referred to by plaintiff as supportive of its position, it is true that the taxpayer donated paintings to a museum with the avowed purpose of stimulating public interest in the display so as to enhance the value of other paintings by the same artists. This, of course, provides benefits to the donor; however, we do not contend that absolutely no benefits can be derived from an otherwise charitable contribution or gift. (*See*, Citizens & Southern National Bank of South Carolina, *supra*, 243 F.Supp. at 904). It is only when the benefits derived are substantial enough to provide a *quid pro quo* for the transfer that the deduction is not allowed. Apparently, the Commissioner did not feel that such a situation existed in Situation (2) of Rev.Rul. 68–314 and 68–658, *supra*. See also, Revenue Ruling 69–90, 69–1 Cum.Bull. 63, and Revenue Ruling 67–446, *supra*, which are consistent with this approach. Such approach, as applied to the facts of this case, produces the following results.

### The School Discounts

■ As for the discounts allowed to the public and parochial schools, our commissioner has found, in finding 97, *infra*, that the discounts to the schools were offered

> for the *predominant* purpose of encouraging those institutions to interest and train young women in the art of machine sewing; *thereby* enlarging the future potential market by developing prospective purchasers of home sewing machines and, more particularly, Singer machines—the brand on which the future buyers learned to sew. [Emphasis supplied.]

It is from this finding, together with careful scrutiny of other relevant facts, that we hold these discounts not to be of a charitable nature.

In arriving at this conclusion we have considered plaintiff's long history of generosity in its cash contributions. See findings 25–30. In addition, we have noted carefully the competitive position of Singer in relation to other manufacturers and distributors of sewing ma-

chines. See findings 59–73, *infra*, and especially finding 58 wherein our commissioner found that "even if it [plaintiff] had a total monopoly in the sewing machine field, it would still offer the schools the 45 percent discount." Notwithstanding the generosity shown by the cash discounts and the competitive position of plaintiff, we are convinced, as was our commissioner, that the plaintiff's predominant reason for granting such discounts was other than charitable. We are not persuaded otherwise by plaintiff's competitive position because our commissioner went on to find, in finding 58, *infra*, that plaintiff, although allowing the discounts even with a total monopoly, "would still be interested in increasing the size of that market by supporting the schools' efforts in teaching young women to sew." Nor are we influenced to find otherwise by plaintiff's evidence that a survey, conducted in 1961, showed that only 1.75 percent of SSMCo's regular retail csutomers were influenced in buying a Singer machine by previous school training. This fact, if one accepts survey results as *fact*, does not change our opinion because even if plaintiff's expectations were not realized, the nature of the transaction is not changed from its initial character. Stubbs v. United States, *supra*. That character, as described heretofore, was of a business nature and not charitable. We are convinced, and so hold, that in reference to the discounts granted to the schools, plaintiff expected a return in the nature of future increased sales. This expectation, even though perhaps not fully realized, provided a *quid pro quo* for those discounts which was substantial. We, therefore, deny the deduction for discounts to the school group.

### Charities Other Than Schools

As for those charities other than the schools, we are of the opinion that from said non-school groups the plaintiff did not expect to receive substantial benefits in return for the discounts allowed. We are convinced that any benefits to be derived from such discounts were merely incidental to the charitable nature of the transfer and, therefore, do not destroy the claimed charitable contribution deduction. In other words, we agree with our commissioner in his finding 98, *infra*, that the

> primary purpose of such discounts was to assist the recipient organizations in the performance of the charitable, religious or public services that they were currently providing. The incidental effect of this policy was the development and maintenance of a favorable public image for plaintiff in the eyes of those organizations and their members.

Such a finding, together with our agreement therewith, makes it difficult to see how the plaintiff could derive substantial benefits from such discounts in the way of increased sales. Therefore, we hold that plaintiff is entitled to deduct, as charitable contributions under section 170, $127,321.80 which is the amount claimed in reference to the non-school charities. However, for reasons indicated heretofore, we cannot allow the deduction of those discounts to the schools and as a consequence thereof, plaintiff is entitled to recover only to the extent so indicated, and beyond that plaintiff's petition is dismissed. Accordingly, judgment shall be entered for plaintiff in an amount to be determined under Rule 131(c).