Mark B. Lloyd and Helen R. Lloyd v. Commissioner.
Lloyd v. Commissioner
Docket No. 2240-68.
United States Tax Court
T.C. Memo 1970-95; 1970 Tax Ct. Memo LEXIS 265; 29 T.C.M. (CCH) 453; T.C.M. (RIA) 70095; April 27, 1970, Filed William H. Beck, 404 Citizens Bank Bldg., Lexington, Ky., for the petitioners. Juandell D. Glass, for the respondent. WHITHEY Memorandum Findings of Fact and Opinion WITHEY, Judge: The Commissioner determined deficiencies of $4,824.85 and $10,091.48 in petitioners' income taxes for the taxable years 1965 and 1966, respectively. Due to certain concessions made by petitioners. [1] the issues remaining for decision are: (1) whether certain payments claimed by petitioners as deductible contributions in the years 1965 and 1966 were properly disallowed as nondeductible personal expenses; (2) whether expenses incurred by petitioners for travel in Asia and Europe in 1965 are deductible as ordinary and necessary business expenses, and if so, in what amount; (3) whether gains realized by petitioners on the sales of land in the years 1965 and 1966 are subject to capital *267 gains treatment. Findings of Fact The parties have stipulated certain facts, which together with the attached exhibits are incorporated herein by this reference. Mark and Helen Lloyd were husband and wife, residing at Wilmore, Kentucky, at the time of filing the petition herein. They filed joint Federal income tax returns for the calendar years 1965 and 1966 with the district director of internal revenue at Louisville, Kentucky. Petitioners are employed and have been employed since 1958 in the capacity of instructors by Asbury College, Wilmore, Kentucky. Mark was a teacher in the speech department during the years 1965 and 1966 and is now chairman of the speech department. Helen was a teacher in the speech and English departments during the years 1965 and 1966 and is presently so employed. During the taxable years 1965 and 1966 petitioners made the payments shown below which they claimed as deductible contributions on their *268 1965 and 1966 individual income tax returns. 1965
1966
Asbury College
$2,970.67
$3,217.70
Asbury College bookstore
69.25
155.26
Asbury College Chest for Christ
30.00
Asbury Theological Seminary
36.00
218.95
Bible Lands Seminar
3,720.00
Kings Players
610.00
305.00 Respondent has disallowed all these claimed deductions except for $1,153.67 and $190.95 claimed in 1965 and 1966, respectively, as deductible contributions to Asbury College. Petitioners' son and daughter-in-law were enrolled as full-time students at Asbury College during the years 1965 and 1966 during which time petitioners were providing practically all of their economic support. Portions of the amounts shown above as contributions to Asbury College and Asbury Theological Seminary were paid by petitioners to the scholarship funds of each institution. They specifically designated their son and daughter-in-law and a friend as the beneficiaries to whom these amounts would be distributed as scholarships. The amounts paid to the bookstore were for unspecified individual purchase of books and supplies. The bookstore did not maintain any contribution fund into which contributions could *269 be deposited. Petitioners' son and daughter-in-law accompanied them on a tour of Europe and Asia in 1965. The $3,720 petitioners paid to the Bible Lands Seminar during the year 1965 and which they claimed as a deductible contribution on their 1965 income tax return covered part of the tour expenses of petitioners' son and daughter-in-law. Petitioners' employer did not require them to make the tour of Asia and Europe as a condition of retaining their position or salary. They took and purchased photographic pictures 455 and took notes concerning places of historical interest they visited during their tour of the Holy Land in 1965. They used the photographs and notes primarily in connection with the production of plays by the Kings Players, a voluntary drama organization at Asbury College which was not listed as a required or elective course on the Asbury College curriculum during the years 1965 and 1966. They were not required by Asbury College to direct, manage or teach the Kings Players as part of their assigned duties as speech and English teachers. They paid $610 and $305 to Kings Players which they claimed as deductible contributions on their 1965 and 1966 income tax returns *270 respectively. They organized and directed the Kings Players, and during the years 1965 and 1966 petitioners maintained books and records and a bank account for this organization. The Kings Players, Inc. was granted tax exempt status as a religious and educational organization in March 1968, but was not a tax exempt organization during the years 1965 and 1966. Petitioner Helen inherited a tract of land in 1945 encompassing approximately 180 acres located near Sun Valley, Idaho. She sold approximately 8 acres from this tract in 1956 for $7,350. In July 1960 petitioners reacquired the same property for approximately $9,850. Thereafter they subdivided the 8 acres and constructed roads thereon. They also subdivided part of the remaining portion of the 180-acre tract. They also constructed roads on at least a portion of the remainder of the 180-acre tract. Petitioners claimed the cost of improvements to this property as part of their cost in computing gain from the sales of lots. The improvements to the property were substantial and substantially enhanced the value of the lots sold in 1965 and 1966. Petitioners maintained an office in Ketchum, Idaho, in 1965 and 1966. During the period *271 1960 through 1966, petitioners listed the property for sale. They had the tract or portions thereof surveyed about 5 times between 1945 and 1960. They made the following sales of lots during the indicated years: Year of sale
Number of lots sold
Cost
Sales price
1957
3
$471.70
$ 3,450.00
1959
1
100.00
3,000.00
1960
2
242.75
6,150.00
1961
4
234.50
9,400.00
1962
3
790.60
6,725.00
1963
14
5,344.49
29,450.00
Year of sale
Number of lots sold
Cost
Sales price
1964
13
$7,423.77
$ 53,450.00
1965
8
6,161.62
46,900.00
1966
5
2,330.45
42,250.00
Petitioners reported on the installment basis the gains realized on these sales and treated the gains reported as capital gains. Ultimate Findings of Fact The payments to Asbury College, Asbury Theological Seminary, Bible Lands Seminar, and the Kings Players, which were disallowed by respondent in his deficiency notice, were nondeductible personal expenditures. The expenditures incurred by them for travel in Europe and Asia in 1965 were nondeductible personal expenditures. Petitioners held the lots which were sold during the taxable years 1965 and 1966 primarily *272 for sale to customers in the ordinary course of their business. Opinion The first question for decision is whether the payments to Asbury College, Asbury Theological Seminary, Bible Lands Seminar and the Kings Players which were claimed by petitioners as deductible contributions for the taxable years 1965 and 1966 were properly disallowed by respondent as nondeductible personal expenses. The amounts paid to Asbury College and Asbury Theological Seminary were distributed by these institutions as scholarships to individuals specifically designated by petitioners, including petitioners' son and daughter-in-law. The payments were, in effect, tuition payments for the specifically designated beneficiaries, and as such are nondeductible personal expenses. Harold DeJong, 36 T.C. 896 (1961), affd. 309 F. 2d 373 (C.A. 9, 1962). The $3,720 payment in 1965 to Bible Lands Seminar was intended to be and in fact was used by that institution to pay part of the expenses incurred by petitioners' son and daughter-in-law on their tour of Europe and Asia; therefore, the payment clearly was a nondeductible personal expenditure. Petitioners have failed to meet the burden *273 of proof required to establish the payments to Kings Players in 1965 and 1966 as deductible contributions within the meaning of section 170. [2] Although petitioners maintained the books and records and a bank account for the Kings Players during the years in issue, they failed to produce the 456 books and records thereof to show the ultimate disposition or use of the payments. The only evidence introduced by petitioners regarding the payments to Kings Players consisted of cancelled personal checks payable to Kings Players and endorsed by petitioner Mark Lloyd. We regard this evidence as insufficient, under the circumstances herein, to support petitioners' claim that the payments are deductible contributions. We also note that the Kings Players was not a tax exempt organization during the years in issue. We hold, therefore, that the payments to Asbury College, Asbury Theological Seminary, Bible Lands Seminar and the Kings Players which were disallowed by respondent in his deficiency notice were properly disallowed as nondeductible personal expenditures. The second question presented for decision *274 is whether the expenses incurred by petitioners for travel in Europe and Asia in 1965 are deductible. The expenditures are deductible under section 162(a) if they constitute ordinary and necessary business expenses. Since the expenditures are allegedly educational, the ultimate question of deductibility herein turns on the factual question of whether or not the major portion of the activities which petitioners engaged in during their tour was of such a nature as to directly maintain or improve skills required by each of them in their employment. [3] In our opinion neither petitioner has shown that "the major portion of the activities" during the tour "was of such a nature which directly maintains or improves skills" required in his or her employment. The tour had very little, if any, relation to petitioners' duties as speech and English teachers. By petitioner Mark's own admission the primary use of the notes and photographs acquired during the tour was in relation to his and Helen's activities with Kings Players, a voluntary drama organization which petitioners were not required by their employer *275 to direct. We hold, therefore, that petitioners have failed to prove they are entitled to deduct as ordinary and necessary business expenses those expenses incurred in their tour of Europe and Asia. *276 The third question for decision is whether petitioners realized ordinary income or capital gains from the sales of real estate lots in the years 1965 and 1966. Respondent contends that petitioners realized ordinary income under section 61 because the property sold was neither a capital asset under section 1221 nor property used in a trade or business under section 1231. In support of his contention respondent asserts that petitioners failed to meet the requirements of either section 1221 or section 1231 because the property sold was "held primarily for sale to customers in the ordinary course of business." [4] Petitioners contend they are entitled to capital gains treatment because they were pursuing an orderly course of liquidation of the property and at no time were in the real estate business. We disagree with petitioners' contention *277 that they were merely pursuing an orderly liquidation of the property Helen inherited in 1945. Petitioners reacquired in July 1960 a portion of the inherited property which they had previously sold in 1956. They subsequently subdivided this reacquired property and made improvements thereon. They had begun selling lots from the remainder of the 180-acre tract in 1957, 457 approximately 3 years prior to reacquiring the 8 acres. Reacquiring a portion of the original tract is plainly inconsistent with an orderly liquidation thereof. Furthermore, the reacquisition and subsequent subdivision and improvements of the property, followed by sales of individual lots thereof, all of which occurred after petitioners began selling lots from the remainder of the tract, convince us that the reacquired property was held primarily for sale to customers in the ordinary course of petitioners' business and not as an investment. We cannot for lack of evidence determine which of the sales reported by petitioners during the years in issue were from the reacquired property and which were from the remainder of the inherited 180-acre tract. We are forced to conclude therefore, that all lots sold during the *278 taxable years 1965 and 1966 were held primarily for sale to customers in the ordinary course of petitioners' business. Our conclusion above would follow concerning the lots sold from the remaining portion of the original tract because of the following facts, considered collectively: (1) the reacquisition in 1960; (2) the subdivision and improvements made; (3) the continuous sales of the lots; and (4) the maintenance of a business office in Idaho, James H. Merritt, Sr., 47 T.C. 519. Since the lots sold during the taxable years 1965 and 1966 were held primarily for sale to customers in the ordinary course of their business, the gains realized therefrom constitute ordinary income. Decision will be entered for the respondent. Footnotes
1. At trial petitioners conceded that respondent properly denied the following deductions: ↩
1965
1966
Office - magazines, dues, etc.
$1,263.52
$1,512.56
Employee business expenses
498.59
408.19
Child care
239.25
2. All section references are to the Internal Revenue Code of 1954, as amended.↩
3. Section 1.162-5(d), Income Tax Regs. 1967, provides in pertinent part: (d) Travel as a form of education. * * * expenditures for travel (including travel while on sabbatical leave) as a form of education are deductible only to the extent such expenditures are attributable to a period of travel that is directly related to the duties of the individual in his employment or other trade or business. For this purpose, a period of travel shall be considered directly related to the duties of an indivdual in his employment or other trade or business only if the major portion of the activities during such period is of a nature which directly maintains or improves skills required by the individual in such employment or other trade or business. The approval of a travel program by an employer or the fact that travel is accepted by an employer in the fulfillment of its requirements for retention of rate of compensation, status or employment, is not determinative that the required relationship exists between the travel involved and the duties of the individual in his particular position. In 1967 respondent revised section 1.162-5 to read as above. See T.D. 6918, filed May 1, 1967. The new regulations are effective for taxable years beginning on or after January 1, 1968, but taxpayers may rely on either the old (1958) or the 1967 regulations for prior years. Rev. Rul. 68-191, 1968-1 C.B., 67. Since, if petitioners failed to satisfy the test for deductibility under the new regulations, a fortiori, they fail under the old regulations, we apply the new regulations in this case. See Stanley and Edith Marlin, 54 T.C. 560↩.
4. Secs. 1221(1) and 1231(b)(1)(B). Although petitioners make no contention regarding the applicability of section 1237, respondent points out that section 1237 is not applicable to this case because petitioners have failed to prove that they made no "substantial improvements" which substantially enhanced the value of the lots sold. We agree.↩