A BYRON SMITH and MIRIAM W. SMITH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 10248-77.
United States Tax Court
T.C. Memo 1980-523; 1980 Tax Ct. Memo LEXIS 61; 41 T.C.M. (CCH) 425; T.C.M. (RIA) 80523; November 25, 1980, Filed A. Byron Smith, pro se. Stephen M. Friedberg, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency in petitioners' Federal income tax for the taxable year 1975 in the amount of $3,671.34, plus additions to tax for negligence in the amount of *62 $183.57 pursuant to section 6653(a). [1] Concessions having been made by both parties, the issues remaining for decision are: (1) whether petitioners are entitled to deductions for office operating expenses, advertising expenses, depreciation, and insurance, in excess of amounts allowed by respondent; and (2) whether petitioners are liable for the addition to tax pursuant to section 6653(a) for negligence or intentional disregard of the rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners are husband and wife who resided in Roanoke, Virginia at the time the petition herein was filed. They timely filed their joint Federal income tax returns for the taxable year 1975 with the Internal Revenue Service Center at Memphis, Tennessee. During 1975 petitioners operated three businesses, a bail bonding company, doing business as a sole proprietorship (hereinafter Bonding), a real estate operation of personally owned residential dwellings, and a fuel oil company, doing *63 business as a corporation (hereinafter Fuel Oil). All three businesses used the same employees and operated out of the same offices. Their clientele was located primarily in and around Roanoke, Virginia. Petitioners maintained three checking accounts for business purposes, one in the name of Fuel Oil, one in the name of Bonding, and one in the name of petitioner Miriam W. Smith. During 1975 several payments were made from Bonding to Fuel Oil so that the latter business could meet its short-term cash needs. Among these were checks totaling $1,866. They were considered office expenses by petitioners. No evidence has been presented that these amounts were ever repaid to Bonding. Petitioner also expended $573.29 for office expenditures out of petty cash, funded primarily from receipts of Bonding. Included in this category are items such as postage, coffee, refreshments for meetings, first aid, and similar items. The office supplies purchased out of petty cash were used in connection with all three of petitioners' businesses; however, no allocation between them was ever made. In 1975 Bonding also expended $258.70 for health and accident insurance coverage for petitioner A. *64 Byron Smith. Petitioners considered this expenditure to be related to all their businesses but, again, no allocation between them was ever made. This coverage was in addition to A. Byron Smith's personal health coverage. The loss payee of the insurance purchased by Bonding was the insured himself. The Bonding Company did very little mass-media advertising during 1975. Instead petitioners believed that they could obtain better, more wide-spread publicity by assisting community organizations in terms of both time and money. Bonding expended $1,135 during 1975 for this purpose. All of these checks were drawn on the account of petitioner Miriam W. Smith. The amounts ranged from $5 to $50. The following groups or organizations received payments: Planned Parenthood of Roanoke Valley; Burnell Memorial Hospital Auxiliary; Roanoke Chapter of Continentals Societies; N.A.A.C.P.; United Fund; Roanoke Diabetes Association; Y.W.C.A.; Coop-Crop; Omega Fraternity; The Sheiks Club, Inc.; Evendale Community Church; Sweet Union Baptist Church; High Street Baptist Church; Bible Band Missionary Circle; St. Paul Methodist Church; First Baptist Church; and Fifth Avenue Presbyterian Church. [2] *65 The benefit to Bonding from these payments was an acknowledgment of the donation in a printed bulletin or leaflet distributed throughout the membership of the organization. Petitioners made the recipient organizations aware that the payment was not personal, but on behalf of bonding. Petitioners realty business consisted of 10 rental properties. Eight of these were located in Roanoke, Virginia, and two were located in southern New Jersey (hereinafter sometimes referred to as the "New Jersey properties"). The New Jersey properties were acquired by petitioners for $15,000 in January 1974, at a sheriff's sale in the State of New Jersey.Petitioners had extended a $15,000 bail bond to the former owner of the New Jersey properties (hereinafter the bondee) with the houses as collateral. When the bondee defaulted on the bond by jumping bail petitioners executed on the properties. Petitioners have assumed existing mortgages thereon.[3] One of the properties, located in Camden, New Jersey, had an assessed value of $6,200 apportioned on the real estate tax bill, $520 to land *66 and $5,680 to improvements. The other property, located in Magnolia, New Jersey, had an assessed value of $14,800 apportioned on the real estate tax bill, $1,150 to land and $13,650 to improvements. Both houses were extremely run down. The Magnolia property was in violation of the Public Health Nuisance Code of New Jersey in 1975, due to its dilapidated condition, while the Camden property was in a rundown condition in a rundown part of the city. Petitioners rented the Magnolia property to the bondee's wife during 1975 but finally evicted her due to nonpayment of rent.Petitioners have otherwise been unable to rent or sell either New Jersey property. For purposes of depreciation, petitioners allocated $3,000 to the Camden property and $12,000 to the Magnolia property. They estimated the useful life of both New Jersey properties at six years. *67 With respect to the eight properties owned by petitioners in Roanoke, Virginia, only three are in issue. At the time petitioners acquired these properties two were 20 years old and one was 22 years old.Petitioners have estimated the useful lives of these three properties at six years for purposes of depreciation. On their 1975 income tax return, petitioners deducted the payments to Fuel Oil, the office supplies, and the health and accident insurance as expenses of Bonding. They also deducted depreciation on the properties hereinbefore discussed on the basis of a six-year useful life. Respondent has disallowed the above deductions either in full or in part on the basis that petitioners have not adequately substantiated their entitlement to them. OPINION The first issue for our decision concerns whether petitioners are entitled to deduct $1,866 paid by Bonding to Fuel Oil for the purpose of assisting the latter meet its short-term cash requirements. Presumably, Fuel Oil deducted this amount as part of its operating expenses to the extent allowed. Petitioners argue that this sum was repaid to Bonding and used to operate that business. Section 162(a) allows as a deduction *68 all ordinary and necessary expenses of carrying on a trade or business. Petitioners have the burden to prove that they are entitled to such a deduction. Rule 142(a), Tax Court Rules of Practice and Procedure. Respondent maintains, and we must agree, that petitioners have not met their burden. Not only have petitioners failed to show that Fuel Oil returned the borrowed funds to Bonding but, assuming that repayment did occur, petitioners have offered no evidence relating to how these funds were spent. Petitioners also seek to deduct cash expenditures for office supplies and the like in the amount of $573.29 in support of which they have supplied cash register and other receipts. Respondent allowed the petitioners $840 in such expenses and maintains that the receipts presented, totaling $573.29, are included within the $840 allowed. Petitioners have the burden to prove that the respondent's determination is incorrect. Welch v. Helvering,290 U.S. 111 (1933). Petitioners dispute respondent's contention but have produced no evidence that these receipts represent expenses separate from those which respondent has allowed. Furthermore, even if the $573.29 claimed *69 and the $840 allowed represent separate and distinct payments, petitioners have offered no allocation of these expenses between Bonding and Fuel Oil. In light of petitioners' concession that the office supplies were for the benefit of both businesses, we have absolutely no basis upon which to determine how much of these expenses are allowable to Bonding. Thus, with respect to this $573.29, we find that respondent's determination must prevail. The next issue for decision is whether petitioners may deduct, as an expense of Bonding, health and accident insurance coverage for petitioner A. Byron Smith. Mr. Smith testified that since the Bonding Company can deduct state-required workmen's compensation premiums for its employees, it should be entitled to deduct similar insurance for its sole proprietor. Respondent argues that this is not a deductible business expense under section 162. Apparently, the insurance at issue provided for income continuation since petitioner A. b/yron Smith likened it to workmen's compensation for employees. Presumably, the benefits of such would inure to his benefit alone. Petitioner A. Byron Smith would be entitled to do with the proceeds of such insurance *70 as he wished. He offered no testimony that the insurance policies restricted proceeds to business use. On these facts the cost of the insurance at issue is not deductible as a business expense under section 162. See Blaess v. Commissioner, 28 T.C. 710 (1957); Rev. Rul. 58-90, 1958-1 C.B. 88. [4]
We next consider petitioners' advertising expenditures for 1975. Petitioners did very little media promotion for the Bonding business. They assert that in lieu thereof they advertised their business through local, civic and religious organizations and that the costs of such, in the form of donations totaling $1,135, should be deductible as a business expense. Respondent concedes that these payments were all made to legitimate charitable organizations and asserts that they are deductible only as personal expenses. Respondent argues that section 162(b)[5] and section 1.162-15(a)(1), Income Tax Regs., preclude deduction under section 162(a). The regulation provides in part: *71 Sec. 1.162-15(a). Contributions to organizations described in section 170--(1) In general. No deduction is allowable under section 162(a) for a contribution or gift by an individual or a corporation if any part thereof is deductible under section 170. * * * Thus, we must determine whether petitioners' payments to charities would have been deductible as a charitable contribution under section 170. A charitable contribution is a "voluntary transfer of property by the owner * * * without consideration therefor." DeJong v. Commissioner,36 T.C. 896, 899 (1961), affd. 309 F. 2d 373 (9th Cir. 1962). If the purpose of the transfer is primarily an exchange for some anticipated economic benefit to the transferor or is actually an exchange for a substantial quid pro quo, then it is not a contribution. Rusoff v. Commissioner,65 T.C. 459, 469 (1975). If the petitioners' payments to charities were "in expectation of the receipt of certain specific direct economic benefits within the power of the recipient to bestow" then the payments may not be considered charitable contributions. Stubbs v. United States,428 F. 2d 885, 887 (9th Cir. 1970), *72 cert. denied 400 U.S. 1009 (1971); Sutton v. Commissioner,57 T.C. 239, 243 (1971). In the instant case petitioners made the payments for the purpose of having Bonding acknowledged in printed leaflets and bulletins as a financial supporter of the organization. This was the custom for those organizations to which petitioners made payments. Advertising was the primary motive of the petitioners in making the expenditure. The patrons of Bonding were predominantly local citizens. When one is in need of a bail bondsman, i.e., in jail, he is more likely to consult community organizations and church ministers than to pick up a newspaper or remember a radio advertisement. We are satisfied that petitioners expected to, and did, receive a substantial quid pro quo from the various charities commensurate with the money transferred. They cannot be said to have made charitable contributions as defined in section 170. Therefore, section 162(b) and section 1.162-15, Income Tax Regs., do not preclude deduction of these expenses under section 162(a). Furthermore, the facts clearly show that petitioners' expenses for advertising through religious and civic organizations *73 were reasonable, ordinary and necessary in furtherance of its Bonding business. Thus, we hold that petitioners are entitled to deduct these expenses under section 162(a). The fourth issue presented for our decision is whether petitioners deducted excessive amounts of depreciation for 1975 on certain of their rental properties. First, with respect to the New Jersey properties, two questions are raised--their useful life and petitioners' depreciable basis in the improvements. Respondent maintains that petitioners have not produced sufficient evidence to show their depreciable basis in these properties. We disagree. Petitioners acquired the New Jersey properties at sheriff's sale for $15,000 and assumed the mortgages thereon. Although the amounts of the mortgages are unclear, it is evident that the basis of the properties, taken together, is at least the $15,000 claimed by petitioners. The mortgages would only increase that basis. Petitioners allocated $3,000 to the Camden property and $12,000 to the Magnolia property, based on consultation with their property insurer. The assessed value of each was $6,200 (Camden) and $14,800 (Magnolia). The record is extremely meager, *74 but based on all the evidence we believe that an allocation of $4,000 to the Camden property and $11,000 to the Magnolia property is more realistic, and we so hold. Respondent also argues that petitionerrs were not entitled to depreciate the land associated with the New Jersey properties. The correctness of this point is clear and petitiones do not appear to dispute it. However, it is apparent that they erroneously equated the land (as well as the improvements) with the bonding loss and considered the entire amount depreciable. The real estate tax assessments for the Camden and Magnolia properties allocated approximately 92 percent of the assessed value of each to the improvements. Petitioners accept this 92 percent allocation to improvements and have introduced no further evidence on this point. Respondent merely urges failure of burden of proof. The record is most unsatisfactory, but the assessments are entitled to some weight. Thus, resolving all doubts against petitioners because of their near failure of proof, we allocate 50 percent of petitioners' basis in each property to depreciable improvements, i.e., $2,000 as to the Camden property and $5,500 as to the Magnolia *75 property. Respondent further asserts that petitioners are not entitled to depreciation based upon a six-year useful life for the New Jersey properties, and again urges complete disallowance because of failure of proof. Respondent has also argued, however, that a fair total term for rental, residential property is 40 years. The evidence introduced at trial is again very meager. It does show that both houses were in a poor and rundown condition and that the Magnolia property was so bad as to be in violation of the New Jersey Public Health Nuisance Code. It would clearly be wrong to deny any depreciation deduction to petitioners, [6] but all doubts must be resolved against them. We adopt respondent's estimate of a 40 year total life [7] for these New Jersey rental properties and estimate their age in 1975 at 5 years, giving them a remaining depreciable term of 35 years. Respondent asserts with respect to petitioners' Roanoke properties that three residences were not entitled to the six-year useful life used by petitioners to determine *76 their depreciation deduction. When acquired by petitioners two of the residences were 20 years old and one was 22 years old. Respondent maintains that petitioners should have calculated depreciation based on 20, 20, and 18-year useful lives. We agree. Petitioners have the burden to prove respondent's determination is incorrect. Welch v. Helvering, 290 U.S. 111 (1933).The only evidence presented by petitioners is A. Byron Smith's testimony that rental property just doesn't last 40 years. Since petitioners have failed to meet their burden of proof, respondent's determination with respect to the Roanoke properties must be upheld. The final matter for our determination is whether petitioners are liable for the section 6653(a) five-percent addition to tax for negligence or intentional disregard of the rules and regulations asserted by the respondent. Once again, petitioners have the burden to prove the respondent's determination erroneous. Johnson v. Commissioner,74 T.C. 89 (1980). Respondent maintains that petitioners failed to properly allocate expenses between their businesses, took depreciation on the total value of rental real estate, including *77 land, took personal expenses as business deductions, and kept little, if any, books and records other than canceled checks and cash receipts. Petitioners have offered no evidence that would overcome the respondent's presumption of correctness. Furthermore, petitioners were subjected to a section 6653(a) penalty when they were before this Court in 1970 [8] on some of the same grounds herein asserted by respondent. Clearly, petitioners were aware of the need to keep adequate records and to properly allocate expenses between their businesses. Accordingly, respondent's determination of additions to tax for negligence pursuant to section 6653(a) is sustained. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in issue.↩
2. Bonding also made payments to the Y.M.C.A. and St. Andrews Catholic Church--which are not here in dispute.↩
3. The amount of the mortgages as well as the arrangements between petitioners and the mortgagees to pay them are unclear. Furthermore, due to the petitioners assumption of existing mortgages and costs to obtain the properties, it is clear that their basis in the New Jersey properties is something greater than the $15,000 claimed by them.↩
4. See also Andrews v. Commissioner,T.C. Memo. 1970-32↩.
5. SEC. 162. TRADE OR BUSINESS EXPENSES.
(b) Charitable Contributions and Gifts Excepted.-- No deduction shall be allowed under subsection (a) for any contribution or gift which would be allowable as a deduction under section 170 were it not for the percentage limitations, the dollar limitations, or the requirements as to the time of payment, set forth in such section.↩
6. See Cohan v. Commissioner,39 F. 2d 540↩ (2d Cir. 1930). 7. Also Cf.Rev. Proc. 72-10, 1972-1 C.B. 721↩.
8. Smith v. Commissioner,T.C. Memo. 1970-245↩.