RUSSELL M. ODD AND JOANN ODD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Odd v. Commissioner
Docket Nos. 15728-82, 5520-83.
United States Tax Court
T.C. Memo 1984-180; 1984 Tax Ct. Memo LEXIS 494; 47 T.C.M. (CCH) 1483; T.C.M. (RIA) 84180; April 10, 1984. Russell M. Odd and Joann Odd, pro se. James A. Nelson, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: This is another case in which taxpayers have claimed deductions for alleged contributions to the Universal Life Church and the Internal Revenue Service has disallowed the deductions and determined deficiencies and additions to tax. The determined deficiencies and additions to tax here in dispute are as follows: Sec. 6653(a), I.R.C. 1954
Year
Deficiency
Addition to Tax
1978
$3,545
$177
1979
$9,125
$456
The issues for decision are: 1. Whether petitioners actually made the alleged charitable contributions within the meaning of section 170(c); [1] if so, whether those contributions were used for petitioners' personal benefit; and 2. Whether any part of the underpayment of tax for each of the 2 years was due to negligence or intentional disregard of the rules and regulations. *496 Because we decide the first issue adversely to petitioners, we need not deal with the broader question as to whether the alleged recipient of petitioners' funds was organized and otherwise operated exclusively for religious purposes within the meaning of section 170(c)(2). Petitioners were legal residents of Alaska when they filed their petition. They filed joint Federal income tax returns for 1978 and 1979. In their joint income tax return for 1978, petitioners reported income from wages in the amount of $38,704, a fully taxable Federal pension of $7,491, interest of $4,780, and a small amount of capital gain. Among the deductions claimed on the return was one in the amount of $10,943, described as a contribution to the Universal Life Church. In their joint income tax return for 1979, petitioners reported income from wages in the amount of $41,351, a fully taxable Federal pension in the amount of $8,199, interest of $5,129, and small amounts of income and losses from other sources. As in the case of the 1978 return, the deductions claimed included one described as a contribution to the Universal Life Church, this one in the amount of $25,015. In the notices of deficiency, *497 the contributions deductions were disallowed in full on the grounds that petitioners failed to show that the claimed contributions were actually made, that the alleged recipient was a qualified organization, or that petitioners received no personal benefit from the use of the allegedly contributed funds. Consistent with the rule applicable to other deductions, petitioners have the burden of proving that they are entitled to the claimed charitable deductions. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. To carry their burden, petitioners have shown that the Universal Life Church of Modesto, California (sometimes hereinafter the Modesto Church), has been held to be exempt from Federal income taxes. Universal Life Church, Inc. v. United States,372 F.Supp. 770 (E.D. Cal. 1974). They have also shown that, on April 13, 1976, the Internal Revenue Service ruled that the Modesto Church is one "described in section 170(b)(1)(A)(i) of the Code" and that: "Donors may deduct contributions to you as provided in section 170 of the Code." Petitioner Joann Odd received from the Modesto Church the "credentials" *498 of an ordained minister and membership counselor and certificate no. 4731-F stating that a congregation of the Universal Life Church was started in Anchorage, Alaska, on May 23, 1978. The name of congregation 4731-F is Universal Life Church Incorporated of the North (North Church) and petitioners are its trustees. 1. Whether Petitioners Actually Made Contributions of the Disputed Amounts
Section 170(a) provides, in part, that there shall be allowed as a deduction and charitable contribution, "payment oif which is made within the taxable year." As stated in the regulation, the contribution must be "actually paid during the taxable year." Sec. 1.170A-1(a), Income Tax Regs. To show that "payment" of the claimed contribution was made during the taxable year, the taxpayer must establish that he parted with dominion and control over the alleged gift. E.g., Glynn v. Commissioner,76 T.C. 116, 121-122 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982). None of the evidence presented by petitioners, as we shall discuss, establishes that they ever parted with dominion and control over the funds for which they claim charitable contributions. *499 The parties have stipulated that petitioners submitted to respondent during the administrative consideration of the case certain documents. These documents are headed "Universal Life Church, Inc., International Headquarters, 601 Third Street, Modesto, CA 95351." Each document states that "The Universal Life Church, Inc. gratefully acknowleges your contribution" of a stated amount. Some of the documents state that the contribution was from Russell Odd and are signed on behalf of the alleged recipient by Joann Odd. The rest of the documents state that the contribution was from Joann Odd and these documents are signed on behalf of the alleged recipient by Russell Odd. The amounts stated in the 1978 documents total $10,943.80, and the amounts stated in the 1979 documents total $25,050. Petitioners offered in evidence two other documents headed "Annual Statement of Contributions" for 1978 and 1979, respectively, signed by Bishop R. E. Imbeau of the Modesto Church. These documents recite that petitioners' contributions aggregated $10,943 in 1978 and $25,015 in 1979. The documents were not received in evidence because of their hearsay character. The testimony shows that the documents *500 do not purport to reflect contributions transferred to the Modesto Church but represent the amounts which petitioners reported to the Modesto Church that they had transferred to a bank account maintained in the name of the North Church. Obviously, in such circumstances, the Modesto Church statements were inadmissible hearsay. Mustain v. Commissioner,T.C. Memo. 1982-670. At the trial, Mrs. Odd identified the numbers of certain checks which she testified were written on petitioners' personal bank account as contributions to the Universal Life Church. She testified, however, that the checks were made payable to the North Church and were deposited in the bank account maintained in that name. Mr. and Mrs. Odd were the only two people authorized to draw checks on the account. When asked how much, if any, of the money was sent from the account to the Modesto Church, Mrs. Odd answered that she did not "honestly remember." When asked whether moneys from the account were used to pay petitioners' rent, utility bills, and other personal expenses, she declined to answer and cited a letter from the Modesto Church instructing her "not to divulge any information regarding financial *501 matters of the Church." Respondent's counsel attempted to obtain cancelled checks and other records on the disposition of the funds deposited in the North Church account. Despite repeated explanations by the Court that such records were highly relevant to the determination of whether the contributions deductions were allowable, petitioners refused to produce them, citing the letter from the Bishop of the Modesto Church directing them not to disclose any church records. [2] The result is that the trial record contains no information whatever on the use of any of the funds that petitioners deposited in the North Church account. *502 The evidence offered by petitioners simply does not show that they ever actually paid any funds to any qualified organization in 1978 and 1979. The charade of one of the petitioners issuing receipts to the other one was meaningless. Their failure and refusal to show how the allegedly contributed funds, all of which were deposited in a bank account that they controlled, were actually used leave us unconvinced that petitioners ever parted with dominion and control over the funds. We hold, therefore, that petitioners have failed to carry their burden of showing that they made any "contributions" in 1978 and 1979. 2. Whether Any Part of the "Contributions," Even if Made, Benefitted Petitioners
Closely related to the requirement of section 170(a) that the taxpayer part with actual dominion and control over the alleged contributions is the further requirement of section 170(c) that the taxpayer show that he did not personally benefit from the alleged contributions. "The phrase 'charitable contribution,' as used in section 170, is synonymous with the word 'gift.'" Sutton v. Commissioner,57 T.C. 239, 242 (1971); DeJong v. Commissioner,36 T.C. 896, 899 (1961), *503 affd. 309 F.2d 373 (9th Cir. 1962). "The presence of a substantial, direct, personal benefit to the taxpayer or to someone else other than the charity is fatal to the claim for a charitable contribution." Tate v. Commissioner,59 T.C. 543, 550 (1973); Seed v. Commissioner,57 T.C. 265, 276 (1971). By declining to offer any evidence on the disposition of the alleged contributions, petitioners have utterly failed to show that their alleged contributions were not used for their personal benefit. Given the magnitude of the alleged gifts in relation to petitioners' income, their deposit in a bank account over which they had exclusive signatory authority, the absence of any evidence that the funds were used for religious or charitable purposes, and the cloak of secrecy that petitioners threw over the records with respect to the use of the funds, the clear inference is that petitioners used the funds for their own purposes. For this reason, also, the deductions are not allowable. Petitioners argue and reiterate that the North Church and the Modesto Church are one church, and a contribution to the North Church is a contribution to the Modesto *504 Church. [3] This argument misses the point we have made. Even if we assume the correctness of petitioners' argument, they still cannot prevail. They have not shown that they actually parted with the money they claim they contributed and have not shown that the money was not used for their personal benefit. If they had purportedly transferred funds to the most traditional of all churches but had, in fact, not parted with control of the funds, or if they had worked out an arrangement whereby the allegedly contributed funds were used for their own personal benefit, they would not, for the reasons we have discussed, be entitled to a section 170 deduction. *505 We add that in a situation like this one, where an alleged organization, such as the North Church, is controlled by a single family and claims to be an organization to which deductible contributions may be made, there is an obvious opportunity for abuse of the claimed tax-exempt status. Such a situation "calls for open and candid disclosure of all facts bearing upon * * * [the entity's] organization, operations, and finances so that the Court, should it uphold the claimed exemption, can be assured that it is not sanctioning an abuse of the revenue laws." Bubbling Well Church v. Commissioner,74 T.C. 531, 535 (1980), affd. 670 F.2d 104 (9th Cir. 1981). From the petitioners' failure to make such a disclosure, we infer that the facts, if disclosed, would show facts adverse to petitioners' position. See Founding Church of Scientology v. United States,188 Ct. Cl. 490, 498, 412 F.2d 1197, 1201 (1969); Parker v. Commissioner,365 F.2d 792, 799 (8th Cir. 1966), affg. in part and revg. and remanding in part a Memorandum Opinion of this Court. There remains the section 6653(a) [4] issue. Under that section, a 5-percent *506 addition to tax shall be imposed if any part of the underpayment of tax is due to negligence or intentional disregard of the revenue laws. Petitioners bear the burden of proof with respect to this issue as well. Enoch v. Commissioner,57 T.C. 781, 802 (1972). Petitioners offered no evidence designed to show that they were not negligent either in reaching their decision to claim deductions for deposits in a bank account that they controlled, or in the preparation of their tax returns. They have not shown, for example, that they received advice from any qualified lawyer or accountant, and we do not think any competent lawyer or accountant would have advised them that their claimed deductions were allowable. Thus, petitioners have failed to carry their burden of proof under section 6653(a). *507 To reflect the foregoing, Decisions will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. The letter from the Bishop of the Modesto Church cites sec. 7605(c). The Court pointed out to petitioners that the final sentence of that section states that: No examination of the religious activities of such an organization [i.e., a church] shall be made except to the extent necessary to determine whether such organization is a church or a convention or association of churches * * *. [Emphasis added.] Whether any part of the earnings of an alleged church inures to the benefit of a private individual (i.e., used for personal benefit) is an issue to be resolved in deciding whether an organization is a "church" within the meaning of sec. 170.↩
3. The Court has repeatedly rejected the argument that the several local Universal Life Churches partake of the exemption granted the Universal Life Church of Modesto. See, e.g., Kellman v. Commissioner,T.C.Memo. 1981-615; Owens v. Commissioner,T.C. Memo. 1982-671; Woods v. Commissioner,T.C. Memo. 1982-653; Riemers v. Commissioner,T.C. Memo. 1981-456; Hall v. Commissioner,T.C. Memo. 1982-337; United States v. Toy National Bank, an unreported case ( N.D. Iowa 1979, 43 AFTR2d 79↩-954, 79-1 USTC par. 9344).
4. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or International Disregard of Rules and Regulations with Respect to Income or Gift Taxes.--If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩