ALVIN STJERNHOLM AND ELSIE I. STJERNHOLM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stjernholm v. Commissioner
Docket No. 4726-85.
United States Tax Court
T.C. Memo 1989-563; 1989 Tax Ct. Memo LEXIS 576; 58 T.C.M. (CCH) 389; T.C.M. (RIA) 89563; October 19, 1989. Michael J. Shidler, for the petitioners. Bruce A. Anderson, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Additions to Tax Under I.R.C Sections
Year
Deficiency
6651(a)(1) [1]
6653(a)
6653(a)(1)
6661
1980
$29,447
$2,944
$3,762
1981
17,709
$885
1982
11,485
574
$1,149
*578 Respondent also determined that petitioners are subject to the addition to tax under section 6653(a)(2) for the taxable years 1981 and 1982, in an amount equal to 50 percent of the interest due on the deficiency which is attributable to negligence. The following issues are presented for our decision: (1) Whether petitioners properly claimed a charitable contribution deduction in 1980; (2) Whether petitioners are subject to the section 6651(a)(1) additions to tax for failing to timely file their 1980 Federal income tax return; (3) Whether petitioners are subject to the section 6653(a) addition to tax for taxable year 1980 and the section 6653(a)(1) and (2) additions to tax for taxable years 1981 and 1982, for negligence or an intentional disregard of the rules and regulations; and (4) Whether petitioners are subject to the section 6661 addition to tax for a substantial understatement of their 1982 tax liability. FINDINGS OF FACT Some facts have been stipulated. The stipulated facts and the exhibits attached thereto are incorporated by reference. Petitioners, Alvin and Elsie I. Stjernholm, resided in Denver, Colorado, at the time the petition in this case was filed. *579 For convenience we refer to Alvin Stjernholm as petitioner. Petitioner has been a doctor of chiropractic medicine since 1961. After entering practice petitioner recognized that a serious problem existed with respect to the public's perception of chiropractic medicine, and its lack of knowledge about the practice of chiropractic. In 1967 petitioner learned that chiropractors in another state were using a mobile education unit (MEU) to convey information to the public about their profession. Generally a MEU consists of a portable trailer containing displays concerning the practice of chiropractic. A MEU is used by locating the trailer in areas of high visibility and allowing the public to view the displays and exhibits therein free of charge. Because of the success other chiropractic professionals had with a MEU, petitioner decided that a MEU used in and around the State of Colorado would be of benefit to his profession. For this reason, in 1968, petitioner and his partner, Dr. Walton, formed the Central Development Foundation partnership (CDF) for the purpose of constructing and using their own MEU. CDF built petitioner and Dr. Walton's first MEU, which was used by them throughout *580 Colorado and certain other states. That MEU was sold to a chiropractic association in Florida in 1970. Other states' chiropractic associations also expressed interest in the use or purchase of a MEU to petitioner and Dr. Walton. For this reason, petitioner and Dr. Walton decided to construct four more MEUs. CDF intended to retain two of such MEUs for leasing purposes and to sell the two remaining. The first of the four additional MEUs (the MEU in dispute) was completed in 1972. That MEU consisted of a semi-tractor and a 42-foot trailer. Inside the trailer were four separate sections. Each section contained a different display or exhibit concerning, among other things, the history and art of chiropractic medicine, the use of x-rays in diagnosing illness, or the effects of poor posture. Dr. Walton died in 1972. Thereafter, petitioner operated CDF and the MEU at issue as a sole proprietor. Petitioner put the MEU to use by allowing chiropractors within the State of Colorado to use it free of charge, and by leasing it to chiropractors outside of Colorado. When used within Colorado, petitioner would pay all of the costs incurred in transporting and displaying the MEU. When *581 used outside the state, the lessee paid all such expenses. The MEU at issue was so used until 1980. In 1980, petitioner became a member of the board of directors of Colorado State Chiropractic Society (CSCS). It has since been determined that CSCS was and is an organization described in section 501(c)(3). See Colorado State Chiropractic Society v. Commissioner, 93 T.C.     (1989). CSCS members consist only of doctors of chiropractic licensed to practice in the State of Colorado. In May 1980, petitioner's attorney suggested that petitioner consider donating the MEU to CSCS. Petitioner's attorney reasoned that, if petitioner was going to pay all the expenses incurred for the use of the MEU by CSCS members, petitioner might consider also getting a tax benefit for such generosity. Petitioner decided to make the contribution in order to get such anticipated tax benefit. Accordingly, petitioner made an offer of the gift to the full CSCS board of directors sometime in late spring or early summer of 1980. At that time, petitioner reasonably believed that CSCS was an organization which had received exemption from taxation pursuant to section 501(c)(3). The CSCS board of *582 directors agreed to accept the gift, subject to certain conditions. CSCS was a fledgling organization in 1980 and did not have the resources required for the repair, maintenance and operation of the MEU. For this reason CSCS' board provided that they would accept the gift of the MEU from petitioner only if petitioner agreed to continue to store and operate the MEU and to pay all its expenses. Petitioner was to continue under those obligations until such time as CSCS would be able to assume the responsibility. Petitioner agreed to the conditions imposed by CSCS. The MEU was formally presented to CSCS in the fall of 1980 at CSCS' first annual convention. At such convention, before an assembly of approximately 80 of CSCS' members, the president of CSCS, Dr. Donald Zisch (Zisch), announced that petitioner was donating the MEU to the organization. After the announcement petitioner handed the keys to the MEU to Zisch and a standing ovation erupted. Immediately thereafter, Zisch returned the MEU's keys to petitioner so that petitioner could remove the MEU from the parking lot of the hotel where the convention was being held. Petitioner continued thereafter to retain general possession *583 of the MEU, except when used by CSCS members. Following CSCS' 1980 convention, a sign was placed on the rear of the MEU which stated that petitioner donated the MEU to CSCS. Nevertheless, petitioner continued to operate the MEU as he had previously, with full dominion and control over the use of the MEU. The MEU was no longer used by anyone other than members of CSCS and was no longer leased to persons outside the State of Colorado, however. If a member of CSCS desired the use of the MEU, such member would have to request and receive the permission of petitioner. Whenever the MEU was used by CSCS members, petitioner would pay all expenses incurred in transporting and displaying the MEU, except that occasionally petitioner would be reimbursed for such expenses by the requesting CSCS member. Such expenses were never paid by CSCS. The expenses petitioner incurred with respect to the MEU were deducted by petitioner on his Federal income tax returns for the years at issue. The deductions taken were characterized on petitioner's tax returns as incurred in connection with petitioner's trade or business and not as charitable contributions. Subsequent to CSCS' 1980 convention, petitioner *584 continued to pay all taxes and insurance incurred with respect to the MEU. Petitioner is named as the insured on the insurance policy covering the MEU in dispute. Further, as of the time of trial, title to the MEU continued to be held by CDF, petitioner's sole proprietorship. Title has never been held by CSCS. On August 14, 1981, a document entitled "Gift of Chiropractic Educational Unit to Colorado State Chiropractic Society" was signed by petitioner, and by Zisch on CSCS' behalf. Such document was intended by petitioner and CSCS to confirm in writing the gift of the MEU to CSCS and the agreement between them as to the use and care of the MEU. The agreement was to be retroactive to the date of CSCS' 1980 convention. According to the document CSCS agreed to continue actively using and maintaining the MEU at CSCS' expense. Despite such agreement, petitioner continued to operate the MEU and to pay the expenses incurred in its operation during the years at issue. After the 1980 convention, petitioner used the MEU for his personal purposes on only one occasion. Petitioner's use entailed hanging a political banner from the MEU advertising a candidate for Governor of Colorado. *585 Petitioner also removed some fixtures and components from the MEU in dispute, subsequent to the 1980 CSCS convention. Such fixtures and components were used by petitioner for personal purposes. For example when respondent's expert was viewing the MEU for appraisal purposes, petitioner informed such expert that the posturometer belonging in the MEU was located in petitioner's chiropractic office. Petitioner filed his 1980 Federal income tax return on November 23, 1981. The return was to have been filed on or before a previously extended due date of October 15, 1981. Petitioner attempted unsuccessfully to get an extension beyond the October deadline from respondent, stating that he needed additional time to determine the market value of the MEU on the date of its contribution. Such request was denied. On his untimely 1980 Federal income tax return petitioner claimed to have made a deductible charitable contribution of the MEU to CSCS in the amount of $163,711, which amount was based on an alleged fair market value for the MEU of $215,000. Petitioner arrived at such fair market value for the MEU based upon an offer allegedly made to petitioner for the purchase of a MEU identical *586 to the one in dispute. Petitioner carried over unused portions of such claimed charitable contribution to taxable years 1981 and 1982. In his notice of deficiency, respondent determined that petitioner was not entitled to the claimed charitable contribution deduction. The parties have since agreed that the fair market value of the MEU on the date of its alleged contribution to CSCS was $88,000. OPINION The first issue for decision is whether petitioner made a charitable contribution of the MEU to CSCS in 1980. In determining whether a charitable contribution was made the analysis applied is the same as that applied in determining whether a gift was made. DeJong v. Commissioner,36 T.C. 896 (1961), affd. 309 F.2d 373 (9th Cir. 1962). For those purposes we have consistently held that the elements of a bona fide inter vivos gift are: (1) a donor competent to make a gift; (2) a donee capable of taking the gift; (3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control *587 of the subject matter of the gift inpraesenti; (4) the irrevocable transfer of the present legal title and of the dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over it; (5) a delivery to the donee of the subject of the gift or the most effective means of commanding the dominion of it; and (6) acceptance of the gift by the donee. * * * [Estate of Hite v. Commissioner,49 T.C. 580, 594 (1968).]
Petitioner bears the burden of proof on this and all other issues before us. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Respondent concedes that petitioner has established elements (1), (2), and (6) of the above test. Elements (3), (4), and (5) remain in dispute. Petitioner must establish that he irrevocably transferred to CSCS present legal title to, and dominion and control over, the MEU. Petitioner has failed to make such a showing. First, as of the date of trial, petitioner continued to retain the MEU's certificate of title in the name of his sole proprietorship. There is nothing in the record to suggest that an attempt was ever made with the Colorado *588 State Department of Motor Vehicles to have title to the MEU transferred to CSCS. Second, also as of the date of trial, all scheduling for the use of the MEU by CSCS members continued to be effected only through petitioner. Scheduling for the use of the MEU has never been done by anyone other than petitioner. Third, petitioner continued to exercise full dominion and control over the component parts of the MEU and, in fact, petitioner reduced some of those component parts to his personal use. Fourth, petitioner was the insured with respect to the MEU and stood to realize any proceeds paid on the policy in the event the MEU was damaged or destroyed. Finally, petitioner continued to deduct the expenses incurred with respect to the MEU as expenses incurred by petitioner in the conduct of his personal trade or business. From these facts, it is clear that during the years in dispute and up to the time of trial petitioner continued to retain title to the MEU and the right to exercise dominion and control over the MEU. Because of this, the record reflects that the most that petitioner can be said to have delivered to CSCS is the limited use of the MEU. Thus, petitioner can be *589 said to have gifted to CSCS only a portion of his entire interest in the MEU. Section 1.170A-7(a)(1), Income Tax Regs., in relevant part provides: In the case of a charitable contribution, not made by a transfer in trust, of any interest in property which consists of less than the donor's entire interest in such property, no deduction is allowed under section 170 for the value of such interest unless the interest is an interest described in paragraph (b) of this section. See section 170(f)(3)(A). For purposes of this section, a contribution of the right to use property which the donor owns, * * * shall be treated as a contribution of less than the taxpayer's entire interest in such property. [Emphasis added.]
In general, section 1.170A-7(b), Income Tax Regs., lists as permissible partial interests the following: (1) an undivided portion of the donor's entire interest; (2) a partial interest in property which was not transferred *590 in trust but which, if it had been transferred in trust, would have been deductible under section 170(f)(2)[2]; (3) a remainder interest in a personal residence; (4) a remainder interest in a farm; or (5) a qualified conservation contribution as defined by section 1.170A-14, Income Tax Regs.
Petitioner's contribution to CSCS of the limited use of the MEU is not a partial interest in property of the type for which a deduction is permitted under section 170(f)(3)(A) and section 1.170A-7(a), Income Tax Regs. Accordingly, petitioner did not make a charitable contribution of the MEU, or of the use of the MEU, to CSCS in 1980. Additions To Tax
The next issue for decision is whether petitioners are subject to the section 6651(a)(1) addition to tax for failing to file their 1980 Federal income tax return timely. In determining whether a return was timely filed, consideration must be given to any extensions granted *591 of the time for filing. If a return is untimely, no addition to tax is imposed if the failure to timely file "is due to reasonable cause and not due to willful neglect." United States v. Boyle,469 U.S. 241 (1985); sec. 6651(a)(1). Petitioners' 1980 Federal income tax return was due, considering extensions previously permitted, on October 15, 1981. Petitioners did not file until November 23, 1981. Petitioners allege that the reason their return was not filed timely is because they were attempting to obtain additional information concerning the fair market value of the MEU as of the date of its contribution. Petitioners have not shown what additional information they were awaiting, or what actions they took to obtain such information. (We note that petitioners sought and were denied an additional extension from October 15, 1981.) When petitioners ultimately filed their 1980 return, the value ascribed to the MEU was $215,000. That figure was based upon an offer allegedly made to petitioners for the purchase of a MEU identical to the MEU purportedly contributed. Petitioners have failed to show on what date they received such offer. If the offer was received *592 prior to October 15, 1981, then petitioners have no excuse for their untimely filing. If the offer was not received prior to that date, but petitioners were awaiting such offer so that they could rely on it in valuing the MEU in dispute, then petitioners were not reasonable in delaying their filing merely for that reason. Regardless of when the offer was made, petitioners have not shown that their untimely filing was due to reasonable cause. Accordingly, petitioners are subject to the addition to tax under section 6651(a)(1) for 1980. The next issue for decision is whether petitioners are subject to the section 6653(a) addition to tax for 1980, and the section 6653(a)(1) and (2) additions to tax for 1981 and 1982. With respect to this issue, we find: (1) that petitioners were reasonable in valuing the MEU for contribution purposes based upon an offer they received with respect to a substantially similar vehicle; (2) that at the time of the alleged gift petitioners reasonably believed CSCS to be an organization exempt from taxation pursuant to section 501(c)(3); and (3) that petitioners were not negligent in believing they had effectively conferred a gift of their entire interest *593 in the MEU, even though we found that they, in fact, failed to make a complete transfer. These are the only bases upon which respondent relies for the imposition of the addition to tax for negligence for the years at bar. Cf. Emmons v. Commissioner,92 T.C. 342 (1989). Accordingly, we hold that petitioners are not subject to the addition to tax under section 6653(a) for taxable year 1980, and is not subject to the additions to tax under section 6653(a)(1) and (2) for taxable years 1981 and 1982. The final issue for decision is whether petitioners made a substantial understatement of their tax liability for 1982 within the meaning of section 6661. Petitioners' only argument on this issue is that they acted reasonably in taking a deduction for their contribution of the MEU and that respondent should, therefore, waive such addition to tax. While we may agree that petitioners acted reasonably, there has been no showing by petitioners that a request was made to respondent for the waiver of the section 6661 addition to tax, or that respondent inappropriately denied such request. Accordingly, we sustain respondent's determination of the addition to tax under section *594 6661. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. Section 170(f)(2)↩ permits the deduction, in certain limited circumstances, of income or remainder interests.