T.C. Memo. 2000-118


UNITED STATES TAX COURT


MICHAEL AND MARLA SKLAR, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1556-97.                    Filed April 5, 2000.


Michael Sklar, pro se.

<u>Mark A. Weiner</u>, for respondent.


MEMORANDUM OPINION


NAMEROFF, <u>Special Trial Judge</u>:  Respondent determined a
deficiency in petitioners' Federal income tax for the taxable
year 1994 of $3,696 plus an addition to tax under section
6651(a)(1)[1] of $408.20.  In the notice of deficiency, respondent
disallowed petitioners' claimed charitable contribution
deductions of $13,240.  The explanation in the notice of

------

[1] All section references are to the Internal Revenue Code
in effect for the year at issue.

deficiency stated: "Since these costs are personal tuition expenses, they are not deductible." In a timely filed petition, petitioners contend that they are entitled to the claimed charitable contribution deductions on the grounds that the amounts in question are similar to those paid for auditing to the Church of Scientology, which petitioners allege the Internal Revenue Service (IRS) has allowed as charitable contributions. Thus petitioners contend that respondent's position is a violation of the Establishment Clause of the First Amendment to the Constitution of the United States.

Background

Some of the facts have been stipulated and are so found. Petitioners resided in North Hollywood, California, at the time of the filing of their petition. The following facts are not in dispute.

On their 1994 joint Federal income tax return, which was filed on November 27, 1995, petitioners claimed a deduction for charitable contributions in the amount of $23,996. Petitioners' 1994 return was examined by respondent, and the charitable contribution deduction was questioned. During the examination, petitioners provided copies of checks totaling $10,756 that qualified as charitable contributions, and this amount was not disallowed.

In addition, petitioners provided copies of checks totaling $7,000 paid as tuition to the Yeshiva Rav Isacsohn Torath Emeth Academy (Yeshiva Rav Isacsohn). Petitioners also provided checks totaling $17,146 in tuition payments to the Emek Hebrew Academy (Emek). Yeshiva Rav Isacsohn and Emek are collectively referred to as the schools. The amounts paid to the schools in 1994 total $24,146.

In July 1996, during the examination of their 1994 return, petitioners presented letters from each school which acknowledge receipt of the amounts paid and state unequivocally that the payments were applied toward the tuition of petitioners' children for their religious and secular education. Each letter also states that the school estimates that the total education comprised 55 percent religious education and 45 percent secular education. According to petitioners, they calculated their claimed 1994 "religious education" deduction in the amount of $13,240 by multiplying by 55 percent the total tuition payments to the schools.[2]

Emek and Yeshiva Rav Isacsohn are organizations recognized to be exempt from Federal income tax under section 501(c)(3). They are classified for Federal income tax purposes as organizations that are not private foundations as defined in

---

[2] There is a $40 unexplained discrepancy.

section 509(a) because they are organizations described in section 170(b)(1)(A)(ii). In short, they are orthodox Jewish day schools, and their students receive a complete dual curriculum in religious and secular studies. Both schools issue academic grades in their secular and religious education programs. During 1994, three of petitioners' minor children attended Emek and one minor child attended Yeshiva Rav Isacsohn.

The schools establish annually the amount of tuition for each student, payment of which is mandatory. There are also other mandatory payments for, inter alia, special events and application processing. Partial scholarships are provided for students with financial needs. Tuition payments are recorded as such in the schools' books, and charitable contributions to the schools are recorded as "donations".

In the petition, petitioners makes no allegations in connection with the addition to tax for delinquency. In petitioners' response to a motion for summary judgment filed by respondent and subsequently denied, petitioners state:

> The primary reason for filing after October 16, 1995, was lack of sufficient time to correctly prepare the return due to high work-related volume petitioner Michael Sklar, who is the petitioner knowledgeable in the taxable affairs of petitioners and regularly prepares petitioners' returns. The reason this was not stated in the original petition is that petitioners felt that it was a moot point as, in the opinion of petitioners, there is no deficiency.

Petitioners presented no further evidence on this issue.

Discussion

The law is well settled that tuition paid for the education of the children of the taxpayer is a family expense, not a charitable contribution to the educating institution. See DeJong v. Commissioner, 309 F.2d 373, 376 (9th Cir. 1962), affg. 36 T.C. 896 (1961). A tuition payment to a parochial school is generally not considered a charitable contribution because the taxpayer making the payment receives something of economic value, i.e., educational benefits, in return. See Winters v. Commissioner, 468 F.2d 778, 781 (2d Cir. 1972), affg. T.C. Memo. 1971-290. The payment proceeds primarily from the incentive of anticipated benefits to the payor beyond the satisfaction which flows from the performance of a generous act. See DeJong v. Commissioner, supra at 376. The Court of Appeals for the Ninth Circuit further stated:

> The value of a gift may be excluded from gross income only if the gift proceeds from a "detached and disinterested generosity" or "out of affection, admiration, charity or like impulses" and must be included if the claimed gift proceeds primarily from "the constraining force of any moral or legal duty" or from "the incentive of anticipated benefit of an economic nature." We must conclude that such criteria are clearly applicable to a charitable deduction under § 170.

Id. at 379.

It is clear in this case that petitioners' payments to the schools were not made out of detached and disinterested generosity or out of affection, admiration, charity, or like

impulses. They were intended as payment in the nature of tuition for petitioners' children, a personal expense. These mandatory payments were received as payments for tuition by the schools. Therefore, they do not qualify as charitable contribution deductions.

In Hernandez v. Commissioner, 490 U.S. 680 (1989), the Supreme Court held on the record presented that payments for "auditing" to the Church of Scientology were not deductible as charitable contributions because they represented a quid pro quo; i.e., the payor was receiving goods or services in return for the payment. The taxpayer in Hernandez had argued, inter alia, that the disallowance of the auditing payments represented an impermissible failure by the IRS to consistently enforce section 170, relying on various revenue rulings, such as Rev. Rul. 70-47, 1970-1 C.B. 49, pertaining to such things as pew rents, building fund assessments, and periodic dues. See id. at 703. However, the Supreme Court rejected this contention because the record therein did not support it.

Petitioners contend that the terms of a closing agreement between the Commissioner and the Church of Scientology are relevant and will show that the Commissioner has agreed to allow charitable contributions for all or a percentage of auditing payments, and that the disallowance of the charitable contribution deductions herein in light of the settlement with

the Church of Scientology is in violation of the First Amendment.

Petitioners have made a proffer of evidence tending to conform to

their allegations.[3]

In her dissenting opinion in Hernandez v. Commissioner,

supra at 705, Justice O'Connor stated:

> It must be emphasized that the IRS' position here is
> not based upon the contention that a portion of the
> knowledge received from auditing or training is of a
> secular, commercial, nonreligious value.  Thus, the denial
> of a deduction in these cases bears no resemblance to the
> denial of a deduction for a religious-school tuition up to
> the market value of the secularly useful education received.
> See Oppewal v. Commissioner, 468 F.2d 1000 (1st Cir. 1972);
> Winters v. Commissioner, 468 F.2d 778 (2d Cir. 1972); DeJong
> v. Commissioner, 309 F.2d 373 (9th Cir. 1962). * * *

There is nothing in the record to show that petitioners'

situation is analogous to that of the members of the Church of

Scientology.  The Church of Scientology and the schools involved

in this case are not identical in their organization, structure,

or purpose.  Auditing, as defined in Hernandez v. Commissioner,

supra, is not the same as a general education, which may include

some percentage for religious education.   Thus we perceive no

denominational preference to require any inquiry into a purported

violation of the Establishment Clause.  As stated earlier,

---

[3]  Petitioners offered into evidence 16 documents with
respect to their contentions.  Respondent objected to these
documents on various grounds, and we took the objections under
advisement.  We have determined that the documents are not
admissible because they are irrelevant to this case.

deductions have been generally disallowed for payments made in exchange for educational benefits, regardless of faith.  See Oppewal v. Commissioner, 468 F.2d 1000 (1st Cir. 1972), affg. T.C. Memo. 1971-273; Winters v. Commissioner, supra; DeJong v. Commissioner, supra.  The taxpayers in those cases were similarly situated with petitioners, and petitioners have not established that they are similarly situated with the members of the Church of Scientology who make payments for auditing.  Petitioners' reliance on Hernandez and the concept of consistent interpretation and enforcement is rejected.

We now turn to the question of whether petitioners are liable for the addition to tax for delinquency under section 6651(a)(1).  Unless shown to be for reasonable cause and not due to willful neglect, failure to file a return on the due date generally results in an addition to tax of 5 percent for each month during which such failure continues, but not exceeding 25 percent in the aggregate.  See sec. 6651(a)(1).

Petitioners contend that petitioner Michael Sklar was simply too busy to timely file their tax return for 1994.  After extensions, their tax return was due on October 15, 1995, but was not filed until November 16, 1995.  Accordingly, in the notice of deficiency, respondent determined the delinquency addition to tax based on 10 percent of the deficiency.  On the tax return, petitioner Michael Sklar is identified as a C.P.A., while

petitioner Marla Sklar is identified as a teacher.  Petitioner's argument that he was simply too busy to file his Federal income tax return for 1994 by October 15, 1995, does not constitute reasonable cause for his failure to file.  See <u>Dustin v. Commissioner</u>, 53 T.C. 491, 507 (1969), affd. 467 F.2d 47 (9th Cir. 1972); <u>Olsen v. Commissioner</u>, T.C. Memo. 1993-432.

To reflect the above,

<u>Decision will be entered</u>

<u>for respondent</u>.